M. HILLER & Co. v. J. R. COTTON & Co.

1. EQUITY—BILL FOR NEW TRIAL AT LAW.—A court of equity will not decree a new trial at law upon a mere showing that the complainant had in reality a good cause and failed to make it out, and that on another trial he will be able to repair his injury; but, on the contrary, the rule is inflexible and rigid that, besides having a good cause, he must have been active and diligent, and that the judgment against him was the result of accident or fraud, and without *laches* or neglect on his part.

2. SAME—RULE ILLUSTRATED.—A non-resident litigant not personally present at the trial, but having a good defense, and having employed competent counsel, and possessed him of all the necessary facts and information for the defense, is allowed in equity a new trial on account of the grievous illness of the counsel preventing his attendance at the trial.

3. EQUITY PRACTICE.—If the bill disclose merits, though defectively stated, the court may sustain a demurrer, but, in such case, should give leave to amend the bill.

APPEAL from the Chancery court of Amite county. WALKER, Chancellor.

The opinion of the court contains a sufficient statement of the case.

*Harris & George*, for appellants.

No case can be produced, at least in this court, which holds that voluntary absence of a party from court during the trial is *per se* negligence. Cases may be found where the want of readiness for trial was on account of the party's absence because he had previously omitted to do something which he ought to have done, or because of his failure to put his counsel in a state of preparation to defend; and then his absence was held to be negligence.

Yeizer v. Buck, 3 S. & M. 439, is relied on, but that case shows that two attorneys were employed, and only one was sick; and besides, it did not appear that the attorney was fully prepared to defend, and, moreover, the case was decided on other grounds.

To hold that a party is always bound to be present in court when the trial of his cause takes place, or take the risk of being charged with negligence, is, in fact,

to overthrow the whole law of agency. For what purpose is a party allowed to employ an agent or attorney to act in his stead, if he must necessarily be present to supervise the agent? Agents are appointed and allowed to act in the absence of the principal, and in his stead. The principal is responsible for the acts, omissions and negligences of his agent, but he is not to be held as guilty of negligence himself, if, having prepared his agent fully to represent him, he chooses to be absent on other business.

A party in a suit in court must prepare for his defense or for the prosecution of his claim. If he fails to do so he is guilty of negligence. But he has done all the law requires of him when, not being a necessary witness himself, he puts into the hands of an attorney whom he has employed, the necessary means of his defense or the prosecution of his claim. What conceivable reason can there exist after this for his presence? Has he not then done all that men of ordinary prudence and discretion usually do? The law requires no more. The law does not require that a party, having a suit in court shall, during its pendency, lay aside all other matters and devote his whole energies to that suit. If so plain a principle requires the citation of authority, it will be found in Triplett v. Scott, 7 Bush (Ky.) 81; Honore v. Murray, 3 Dana, 31; Turner v. Booker, 2 ib. 334.

If we are correct in the position that the voluntary absence of complainants, they having employed counsel and put in his hands the means of defense, was no negligence, then we have this case. The complainants having done all the law required of them, being fully prepared to defend the case and for trial, and having been in this condition for six terms, were deprived of all opportunity to defend by the accident of the sickness of their counsel, of which they had no notice—the other side being fully aware of the accident,—does

not this establish our title to relief? It is said it does not, because our sick counsel, though seriously ill and unable to attend to the business, did not give complainants notice of such inability, whereby they might have employed other counsel. That the defendants are entitled to retain and collect their unjust judgment because sick counsel was not active and vigilant in communicating the fact of his sickness to the complainants. The demurrer admits the injustice of the judgment; it admits the sickness and inability of counsel; it admits the complainants' non-residence and absence; it admits the baffling delay of six terms; it admits the *ex parte* trial when complainants were not present; it admits that not a single cent of the $4,200 received is just; yet it is insisted that this large sum shall be imposed as a penalty on the complainants for the failure of their sick counsel to notify them of such sickness. If that were a fault, was ever so light a fault punished by so heavy a penalty? But we confidently insist that it was no fault—no omission—of the sick counsel.

The law of vigilance applies only to those capable of exercising that virtue. The bill says that the counsel had been sick—quite ill—for some time; that he was unable to attend court and to attend to their business. Counsel are officers of court; they act under an oath of fidelity to their clients. They have the certificate of the court that they are good men or of good character. Are we, then, allowed to presume them guilty of negligence? Is not every presumption to be indulged in their favor?

But is the law of eternal and sleepless vigilance to be carried to the sick room, and does it bind the patient, racked with pain or in the frenzy of delirium? Is the careworn and overburdened lawyer, when he at last succumbs to disease, brought on, it may be, by a too exclusive devotion to his client's interest, to

have his slumbers broken by thoughts of how to extricate those who may have been brought into peril by his illness ? No law, human or divine, sanctions such a rule. Common sense dictates that if a lawyer be too sick to attend to business in court, he is not required to employ his weakened faculties in thinking of or attending to business out of court. On this point, the court is referred to Cutler v. Rice, 14 Pick. 494.

It is not denied that parties having the opportunity of making their defense may be estopped to say that the judgment is unjust, if, without just excuse, they have failed to avail themselves of the opportunity thus offered. In such cases, it is not said that the judgment is unjust or the claim enforced by it unfounded, but that the judgment is conclusive of the validity and justice of the claim.

But can this be said when the party, by an accident over which he had no control, has been deprived of this opportunity of defense, when the trial has been *ex parte* and the claim enforced iniquitous; or can it be said when the party using that diligence, which ordinarily prudent men use in similar cases, has yet failed to use extraordinary foresight and care in providing against contingencies which could not have been antipated; or when, being overtaken by an accident which disturbed his mind or weakened his facilities, he did fail to act with that circumspection and care which only the strong-minded or most vigilant use ?

The law does not require perfection in the conduct of men. It deals with mankind as they are—as weak and imperfect beings. It requires, therefore, only that vigilance and care which men of ordinary prudence and discretion apply in the management of their business; or, to express it in another way, the average diligence of mankind; not that extreme care and caution which only the most gifted and prudent use, nor yet that gross negligence of which the unthrifty and

proverbially careless are guilty. See Hannah v. Indiana Cen. R. R. Co., 18 Ind. 431, where a new trial was granted because the defendant was not present on the trial, in consequence of being misinformed by her counsel as to the county to which a change of the venue was ordered.

If any other rules were enforced, courts, instead of being tribunals for the administration of justice, would be arenas for the exhibition of the skill of the contestants; the judge, instead of being an officer to administer justice, would be an arbiter to award the prize to him who had exhibited the greatest skill and most perfect tactics in the management of the dispute.

" The whole spirit of modern jurisprudence," say the court, in Hewett v. Cobb, 40 Miss. 61, " is directed to prevent substantial justice from being defeated by an adherence to mere technical forms. Our code is full of provisions designed to relieve the proceedings in our courts of justice from the rubbish that, for centuries on both sides of the Atlantic, had been accumulating on them."

In this spirit we have the statute of jeofails and the most ample power granted to courts to allow amendments, so that the substantial justice of the case may be arrived at. In this spirit, also, was introduced the practice of granting new trials; and in accordance with this spirit are framed many of the maxims which guide courts in granting or refusing new trials. Where substantial justice has been done, a new trial will not be granted for error of law in charging the jury or the admission of illegal evidence. McMullen v. Mayo, 8 S. & M. 298; Rouch v. Agricultural Bank, 12 ib. 161; Skinner v. Collier, 4 Hutch. 396. But it would be granted if it be manifest to a reasonable certainty that justice has not been done. Taylor v. Sarsby, ib. 97.

In the same spirit is the language of the supreme court of Massachusetts, in Cutler v. Rice, 14 Pick. 494.

In that case an application was made for a new trial because counsel was mentally disturbed by information of the sickness of his child, received during the trial, and thereby forgot to make a claim for improvements for the defendant in an action of ejectment. The court say: "The application is a novel one, but we know of no limits to the power of the court to interfere when the plain and manifest dictates of justice require it, taking care that it shall never be so exercised as to encourage negligence or fraudulent contrivance in the conduct of trials. Such an application is founded on the broadest principles of justice."

But if a new trial be granted, what then? It is not a final determination of the case against the defendants. They lose nothing by it but an advantage which they gained by the sickness of their adversary's counsel. If their claim be just, they can establish it on another trial; if it be fraudulent and unfounded, it ought not to be enforced. The granting of a new trial, therefore, is entitled to greater consideration than the refusal of one. Dorr v. Watson, 28 Miss. 383. The same principle applies in granting or refusing a reargument in this court. Tunstall v. Walker, 2 S. & M. 638.

But the courts of equity, in cases of surprise and accident, are more liberal in granting new trials than the courts of law, when the claim is unconscientious. See Webster v. Skipwith, 26 Miss. 341. I call the attention of the court especially to that case, where a new trial was granted in equity notwithstanding a new trial had been refused at law. The court then indorsed this language of Judge Story: "That in all cases where by accident, mistake or fraud, or otherwise, a party has an unfair advantage in a proceeding at law which would necessarily make that court an instrument of injustice, and it is therefore against conscience that he should use that advantage, a court of equity will restrain him from using that advantage."

*H. Cassedy, Sr.*, for appellees.

The case of Thomas v. Phillips, 4 S. & M. 423, was elaborately argued by counsel and laboriously investigated by the court, and the conclusion reached never since departed from, that equity will only interfere in cases where the injured party could not avail himself of his defense at law, or of which he might have availed himself at law, but was prevented by fraud or accident, unmixed with any fault or negligence in himself or his agents. The complainant ought to establish some special ground for relief, as that the defense could not at the time, or under the circumstances, be made available at law without any *laches* of the party. Thomas v. Phillips, 4 S. & M. 424, *et seq.*

Applying these principles as the recognized law of this state (without exception in the adjudicated cases), to the allegations of complainant's bill, the correctness of the decree sustaining the demurrer will be abundantly vindicated.

1. The bill does not show that defendant had any defense at law to the action. The bill shows a dealing between J. R. Colton & Co. with the complainants, as principal and factors, and that the mere question of indebtedness arising out of this relation was settled. That is, that the monies arising from the sales of cotton shipped by defendants to complainant had been paid over to them by the complainants in the form of supplies advanced and drafts paid by complainants to and for the defendants, J. R. Colton & Co. But the bill also shows that the action commenced by attachment, by J. R. Colton & Co. against M. Hiller & Co., in the Amite circuit court, resulting in the judgment complained of, was not predicated on any indebtedness arising out of that mere mercantile transaction of debts and credits. But on the contrary, the real cause of such suit is stated thus: " Defendants pretending

that your orators were indebted on account of sale of said cotton in disobeying instructions of defendants to them in the sum of $3,253.55." This was the basis of the attachment suit, damages arising from the breach of the implied contract between J. R. Colton & Co., and their factors, M. Hiller & Co., in selling their cotton in disobedience of the orders of defendants, J. R. Colton & Co. The only defense M. Hiller & Co. could have made to such suit, would have been proof that no such disobedience of orders, no breach of the implied contract occurred, to the damage of said J. R. Colton & Co. Yet, nowhere in the bill is this "pretense" of J. R. Colton & Co. denied to be well founded, or averred to be a false pretense, or that they could have proved it so at law, or that they can prove it false should a new trial be granted at law. The nearest that they come to alleging such a defense, is where the charge is made on information and belief "that the claim of defendants is not real or *bona fide,* and that they will be able to show that the judgment against them and the garnishees is unjust and fraudulent." Yet, if this were true, it is known to them, and does not depend on information and belief, but they could state the facts which they expect to prove, so that the court might be enabled to judge whether they authorize the sweeping and general terms of "unjust and fraudulent," by which the judgment is denounced.

Such charge in a bill, without any facts on which such conclusions are predicated, would not require an answer denying fraud. With greater reason will they be held insufficient to show a defense to a judgment at law, or furnish a satisfactory reason for disturbing it in a court of equity.

2. The bill does not set out the pleadings in the case at law, showing the nature of the action or the defense set up by M. Hiller & Co., nor the evidence of plaintiff in the trial at law, nor the substance of the evidence

of the deposition of Smith, nor the contents of the letter of J. R. Colton & Co., so that the court might be able to judge whether such evidence was pertinent to the issue, or whether defendants were injured by its not being before the jury. Hence no equity appears on the face of the bill from which the court can infer that the judgment was unjust or fraudulent.

Therefore the bill does not show that the defense could at any time or under any circumstances have been, or can hereafter be, made available, because no defense is stated at all.

But assuming that the vague statements of the bill could, under any circumstances, amount to a defense to the action, the pregnant question still arises, was Hiller & Co. prevented from availing themselves of such defense in the action at law, by fraud or accident, unmixed by any fault or negligence of theirs?

3. No fraud is imputed as the cause of their failure to make their defense at law.

4. The ground is the accident of the illness of their attorney, D. W. Hurst. But this was clearly insufficient, as held in the case of Yeiger et al. v. Burke, Watt & Co., 3 S. & M. 453. The court say: "The party himself should have been present." Ib. The bill does not pretend to give any excuse for the non-attendance of M. Hiller & Co. at the March term, 1872, of the circuit court of Amite county, except that they lived out of the state. With reference to this excuse, the court, in the case reported in 14 S. & M. 159, 160, say: "The claimant was absent himself from the state, and giving no apparent attention to the suit. The law is made for the vigilant, not for the slothful, and will not take from the attentive an advantage obtained without unfairness, to bestow it on the inattentive and negligent. The court could not deprive the party of his judgment at law, obtained without fraud, without

overruling the settled distinctions between law and equity." See also Robb v. Halsay, 11 ib. 146, 147.

Absence of a party from the state is no ground for a new trial. Davis v. Pressler, 5 ib. 463. It has been held that the sickness of a party himself will not authorize the interference of chancery after a judgment at law. Hare v. Reynolds, 3 Ala. 521.

With stonger reason chancery ought not to interfere in such a case by reason of the sickness of an agent or attorney, where the real party in interest had no excuse for being absent.

If, then, the sickness of complainants' counsel is not an excuse for the *laches* of M. Hiller & Co., in not being present to attend to their own business, it follows that the knowledge of such illness by J. R. Colton & Co. constitutes no unfairness in having their case tried, notwithstanding the negligence and inattention of M. Hiller & Co. in failing to attend to their business; and the statement of such facts, in the bill of complainant, is not sufficient to justify a court of equity in taking from the attentive an advantage obtained without unfairness to bestow it on the inattentive and negligent, nor could the court deprive defendants of their judgment at law, obtained without fraud, without overruling the settled distinctions between law and equity. 14 ib. 159, 160.

There was, therefore, no equity on the face of complainants' bill, and the chancery court, in so holding, committed no error in sustaining the demurrer, dissolving the injunction and dismissing the bill, and the decree should be affirmed.

SIMRALL, J. :

A bill in chancery was brought by M. Hiller & Co. against Joseph R. Colton & Co., to obtain a new trial in a suit at law. The equity of the bill is, that the

demand· made by the defendants in their suit at law against the complainants was unfounded, and that complainants were prepared to make the proof of it on the trial, but that without fault or negligence on their part, they were unable to do so. The adjudications in this state have established the rigid and strict rule, that the complainant must have been diligent and active in the preparation of his defense, constant in readiness to meet the trial. If, therefore, he failed to make his defense, it must have been the result of accident or fraud, not superinduced by *laches* or neglect in his conduct. Courts will not intervene to relieve the slothful from the consequences of his folly, by taking from the vigilant the advantages he has gained. It must be clearly manifested to a court of equity that injustice has been done; that on another trial the wrong will be repaired; and, lastly, that the complainant was not at fault in pretermitting the opportunity to make his defense.

Judge Story, in his Equity Jurisprudence, 178–188, lays down two grounds of jurisdiction: First, that the complainant had a defense purely equitable, which could not be made in a court of law. Second, a defense, legal in character, which might have been made at law, but was prevented by accident or fraud, unmixed with any fault or negligence in the complainant or his agents. Where the court of law would take cognizance of the defense, then the special reasons must be shown why it was not made, the party himself being free of *laches*. Thomas v. Phillips, S. & M. 424; Gott v. Carr, 6 Gill & Johns. 312.

Courts of equity disclaim the power to examine and review judgments at law. The relief is administered by operating upon the person, compelling a submission to a new trial by a perpetual injunction of the judgment. The interposition is because the court of law has lost control over its judgment, and can afford no

remedy to prevent irreparable mischief; chancery compels the sucessful party to submit to a new trial. A careful examination of the cases would serve no other purpose than to show how the general rule has been applied. The circumstances set up by the complainants, as accidents, which excuse them from fault and *laches*, are, that they were non-resident commission merchants at New Orleans, Louisiana; that they employed D. W. Hurst, Esq., as their attorney to manage the case for them, furnishing him with all the facts and information to enable him successfully to defend; that for several terms their attorney was ready, but the case was not brought on for trial; but, that at the March term, 1872, after several continuances, the judgment was recovered *ex parte*, their attorney being absent, confined by severe illness, of which they had no knowledge.

Counsel for appellees urge, on the authority of Yeiger v. Burke, Watt & Co., 3 S. & M. 453, that there was a want of due diligence, because the complainants, or one of them, should have attended the trial. In the case cited, the party had the opportunity to make the defense (usury) in a suit in New Orleans, of which he did not avail; he could have done so in this state; besides, he had "two" attorneys, only one being sick. After demurrer overruled to the declaration, the defendant failed to plead over. Moreover, his bill was not filed until pressed with execution on a forfeited forthcoming bond. After enumerating these facts, the court say: "The party himself ought to have been present." In Lee v. Pass, 14 S. & M. 160 (also cited), commenting on the circumstances, the court say: "There seems to have been an abandonment of all necessary attention; no preparation was made for trial, no evidence procured." In Robb v. Halsey, 11 S. & M. 147, the statement was so barren of merit that it was said "to be doubtful whether it was sufficient

to have continued the case."   After an examination of all the cases to which we have been referred, we find none of them holding that a non-resident litigant, who has constituted an attorney and pleaded to the suit, must himself be personally present at the trial, and if not, that circumstance alone is such *laches* as cuts him off from relief in equity, however meritorious his claim in all other respects may be.   It would not be controverted, that if both the party and his attorney had been detained from the court by sickness, the excuse would be ample.   We are of opinion that the complainants, engaged in commercial business in another state, and resident there, have used due and reasonable diligence when they employed counsel and put in his possession the facts and information necessary to their defense, which could be used by him on the trial in their absence.   They, however, having selected an attorney, must abide the consequences of any lack of diligence or promptitude on his part.   If the attorney is hindered from attending the trial by a supervening cause above his control, and for which he is not responsible, as a grievous sickness, then *laches* can not be imputed to the complainants.   The illness of the attorney is an "accident," in the meaning of the law, which absolves the non-resident client from all blame, if he was not advised of it.

When we consider questions of diligence and negligence, we must refer for the rule to the conduct and practice of men of ordinary prudence in similar circumstances.   The law ought to receive a reasonable application.   It would be unreasonable to expect or require that the members of a commercial firm in New Orleans, with extensive and ramified business correspondence in the country, should give personal attention and presence in the various courts where they might have litigation.   The courts might be so widely separated, and the terms so conflicting, that a personal

presence would be impossible. Nor should the weightier matters of business at home be neglected, as might be if they were required to travel from town to town in order to give personal supervision to their suits in courts.

Considered in connection with the other facts, the statement of the bill deserves weight—that Hurst was present several terms of the court ready for trial, but it was not brought on until three years after suit brought, and then in his absence, when it was known by the defendants that he was confined by sickness.

We think the allegations of the bill fully discharge the complainants from negligence and *laches.*

The averments as to the defense that could have been made, are not full, clear and positive. The merits are to be gathered by inferences, rather than direct statement. Enough is disclosed to indicate that the complainants have merits; the bill falls in the category of a good title defectively stated. The fair interpretation would be, that the complainants had not violated the instructions of the defendants in reference to the sale of the cotton, and, therefore, there should not have been a recovery. There should have been a distinct statement of the cause of action, and of the defense intended to be made, either that no instructions were given, or if given, they were conformed to, or that the complainants had made advances, or incurred liabilities for the defendants, which took away from them the right to control the sales, as the facts may be. It is easy enough to deduce from the averments, aided by the exhibits, what the defense was, and to discover that it might have been successful upon a fair and full investigation.

We think the demurrer might have been sustained for these defects in the bill, but the court ought to have given leave to amend, so as to have enabled the complainants to perfect the bill.

The decree sustaining the demurrer is affirmed, but the bill is ordered to be retained, and the cause remanded with leave to complainants to amend; if not amended, then to be dismissed.