# CASES ARGUED AND DECIDED

## IN THE

# SUPREME COURT OF MISSISSIPPI

### AT THE

## APRIL TERM, 1876.

---

### J. R. COTTON vs. M. HILLER, et al.

1. CHANCERY PRACTICE: *Bill for injunction. New trial at law.*
To entitle a party to the assistance of a court of equity, after a trial at law, he must impeach the justice of the verdict by facts of which he could not avail himself, by reason of accident, mistake, or fraud in the conduct or acts of his adversary; that he is without blame or negligence, and that injustice has been done, which would be repaired on a second trial. A complainant, seeking a new trial at law, must establish, to a high degree of certainty, the validity and potency of his defence; and the question is whether, if a new trial is granted upon the showing made, he would be entitled to recover.

2. CONSIGNOR AND CONSIGNEE: *Instructions.*
A general consignment to a factor imports an authority to sell according to the usages of the trade. But the consignor may, at the time of the shipment or afterwards, if before the sale, impose terms as to time and price, to which the factor must conform.

3. SAME: SAME: *Advances to owner. Liabilities incurred.*
Where a factor, in consideration of consignments made to him, makes advances or incurs liabilities for the owner or consignor, such owner cannot, by subsequent instructions, control the action of his factor. If the advances are made or the liabilities incurred on account of the consignment, and before an assent to the directions of the owner in respect to the time of sale or the price, the factor has thereby acquired a special property, and may sell so much as will reimburse him. The owner has a general right to impose terms upon his factor, but that right is restricted if he has drawn against the consignment before the instructions are given, and he cannot control the factor as to time of sale or price unless he pay the factor for the advances made or the liabilities incurred.

4. SAME: SAME: *Disobedience of instructions.* *Ratification of unauthorized acts of an agent.*

  It is the duty of the principal, when informed of the unauthorized act of his agent, to promptly disavow it, and to notify the agent that he will be held responsible for the consequences of his unauthorized act.

APPEAL from the Chancery Court of *Amite* County.

Hon. E. H. OSGOOD, Chancellor.

All the facts necessary to a full understanding of the case, and the principles announced, are stated in the opinion of the court. The error assigned is as follows: The court erred in rendering a final decree in said cause for appellees, in perpetually enjoining the judgment at law, in the bill described, and granting a new trial at law to the said appellees, in the case in their said bill described, in the circuit court of Amite county.

*Cassidy & Stockdale,* for appellant:

1. Do the proofs clearly manifest to a court of equity that injustice has been done the complainants by the judgment at law?

2. Does the case made by the complainants manifest, with reasonable certainty, that a different result at law will be attained upon a new trial there?

3. Is it made to appear that the complainants were not at fault in failing to make their defense at law?

The general basis upon which equity jurisdiction rests is its purpose and power to dispense justice, and law is the measure and standard of justice. Equity interferes to grant relief, in disturbing the action of courts of law, only when the machinery of law is perverted in their design to effect justice. The equity of the bill consists in a denial of the fact of orders to hold the cotton of appellant, and avers a rightful sale to reimburse complainants for advances above the value of the cotton sold; so the first question is one of fact. The first consignment was October 7, 1867, with these orders: "*We do not want the cotton put upon the market until you hear from us.*" Complainants answered October 8, 1867. This is a specimen of the correspondence. Various lots of cotton were sent, and

letters instructing complainants, in different phraseology, such as, "Do not sell our cotton until you hear from us on the subject," "Do not sell until further instructions from us," "Hold to this cotton until further instructions," "Wait further instructions before selling," "Place it with our previous shipments." Letters from complainants assent to these requests, with invoices of advances and honor of drafts: "We shall hold same as advised," "Will hold same as ordered," "Will place same with previous shipments," "Shall meet attention demanded," "Same shall meet usual attention." Overwhelming testimony of witnesses corroborate this. It is true advances had been made and drafts honored. But the rule on the subject is, a bailment is the delivery of a thing in trust for some special purpose, upon contract, express or implied, to conform to the purposes of the trust. Story on Bailments, § 2; see also Edwards on Bailments, 283. Where his instructions are clear he must observe them, or become liable for damages resulting. Story on Agency, 110; Bell v. Palmer, 6 Cowen, 128. As conclusive on this branch, see Brown & Co. v. McGrau, 14 Peters, 479. (The factor has no right to sell, where advances are made to the value of the goods, until the principal has been called upon and refused to pay. 6 Cowen, 128, supra; George v. McNeil, 7 La., 124, 130, 131; Zoit v. Wellander, 16 Martin, 470; 7 Hill, 497.

Complainant's equity must be free from doubt. Marine Ins. Co. v. Hodgson, 7 Cranch, 332; Wright v. Easton, 7 Wis., 595; Bradley v. Richardson, 23 Vt., 720; Cardew v. Jones, 23 Ga., 175; 14 Peters, supra.

Harris & George, for appellees:

The point at which the examination of the ground of the decree begins is the trial in the court of law. The testimony on that point is explicit. Neilson states that the case was submitted to the jury in the absence of the defendants and their counsel. W. A. Cotton, one of the plaintiffs, swore that the cotton was shipped with instructions not to sell until ordered; that such instructions were repeatedly given, by

letter and orally, to M. Hiller; that the cotton was sold in violation of these instructions. He proved the difference between the price for which it sold and the price which it would have brought at the time it should have been sold. There was no cross-examination. The evidence developed in the chancery court shows, first, that Cotton suppressed the fact that J. R. Cotton & Co. had commenced to draw against cotton shipped from early in October, 1867, to the time of sale, and had drawn, in supplies and money, over $5,000 up to December 20, 1867, when the letter advising M. Hiller & Co. to draw on the company's cotton for all that was due was received. He suppressed the fact that the letter had been written, and also the fact that he had settled the account on March 10, 1868, and paid over the balance, thus appropriating the proceeds of the sale, and, in fact, accepting it.

The verdict was based on the assumption that the orders or requests were obligatory.

Counsel for complainant was sick and unable to attend the court. Indeed, the evidence fully sustains the bill. Was there a solid ground of defense? In the absence of an express agreement to the contrary the factor had the right to sell at any time, if it was understood that the shipper was to order goods and draw drafts against the shipment. See Story on Agency, 559. The arrangement was the ordinary one: the country merchant to buy and ship cotton, the commission merchant to accept and pay drafts and fill orders for goods. This arrangement leaves the power unrestricted. See Story on Agency, 558, §§ 423, 424. We assert that the relations of the parties were such that Cotton & Co. understood their "Don't sell" as a simple request. They had no right to order or instruct, and the reply, "Your wishes will have attention," "We note your request," "Will place it with other shipments," and the like, according to the usage of such dealings, meant simply that the request should have due consideration—we will indulge you if we can.

After a sale under such circumstances, there being no fixed

time for sale, could it be affirmed that an order would not have been given, or the right of the factor to reimburse himself asserted, from 3d or 10th of January to the 10th of March?' A receipt of the proceeds of the sale is a discharge of the factor. Rion *v.* Gilley et al., 6 Martin La. R., 417; Surgat *v.* Potter et al., 12 ib., 365; Breedlow *v.* Wormack, 2 Martin, N. S., 181; Fowler *v.* Gilmore, 7 ib., 140–143.

SIMRALL, C. J., delivered the opinion of the court.

M. Hiller & Co., against whom J. R. Cotton & Co. had obtained a pecuniary recovery at law, exhibited a bill in chancery, craving that the judgment at law might be enjoined, and that Cotton & Co. should be compelled to submit to a new trial. On final hearing on the pleadings and proofs the relief was granted. J. R. Cotton & Co. have brought the case to this court for review. It is established doctrine that a court of equity will not assist a party after a trial at law unless he can impeach the justice of the verdict by facts of which he could not avail himself, by reason of accident, mistake, or fraud in the conduct or acts of his adversary. Duncan *v.* Lyon, 3 John. Ch. Rep., 356; Insurance Co. *v.* Hodgson, 7 Cranch, 336.

Two propositions are propounded to the chancellor by the complainants, both of which they must make good: First, that the failure to make defense at law is attributable to one or the other of the causes enumerated, and that no blame or negligence is to be attached to them; and that injustice has been done, which would be repaired on a second trial.

In one sense the chancery court tries the case on the merits, as it would have been tried at law if the defense had been made. The complainants must set forth the grounds of their defense, and, if controverted, prove them, so that the chancellor may clearly see whether injustice has been done or not.

A fair opportunity should be afforded to defendants to present and sustain their defense. If they do not avail of it when

they may, a court of equity will decline to re-open the litigation to repair a misfortune referable to their own negligence. Although no negligence can be charged to the defendants, why enjoin a just judgment and grant a second trial, if, from all the circumstances averred and proved, it has not been shown that injustice has been done, and that a second trial would produce a different result? But, when the defense was prevented by circumstances beyond the control of the party, he must show that, if he could have made it, it would have been good and valid. Speaking of it in McDonald v. Myers, 12 S. & M., the court say: "In such an application a complainant, seeking a new trial at law, must establish, to a high degree of certainty, the validity and potency of his defense." On the same question, in Lindsay v. Sellers, 26 Miss., 173: "It is a maxim, from which courts of equity are studious not to swerve, that they will never do a useless thing. Applying this maxim, the inquiry is whether, if the judgment were set aside at law and a new trial granted, the complainant, on the showing made, would be entitled to a recovery." See, also, Hiller & Co. v. Cotton & Co., 48 Miss., 593.

Passing by the question of whether Hiller & Co. were negligent, we advance to notice the claim upon which Cotton & Co. recovered at law. They complained that they made sundry shipments of cotton to Hiller & Co., factors, at New Orleans, and that these merchants received the consignments under instructions not to sell until advised, and that they accepted the cotton on these terms; but, in violation of their engagement, they sold, without instructions, when the market was depressed, by which the plaintiffs were damaged over $3,000. Hiller & Co. admit that the consignments were usually accompanied with directions to hold until further orders, but claim that they were in reality no more than "requests," to which the factors might conform or not, or as long as might be convenient; but they were not obligatory, because the factors filled orders for goods and made advances on the property from time to time, so that, when sold, these

orders and advances fully covered, and, in truth, were a little in excess of, its value. A factor is an agent who is commissioned by a merchant or other person to sell goods for him and receive the proceeds. Selw. N. P., 823. The general rule is that the agent must conform to the instructions of his principal, or abide the consequences of disobedience. A general consignment to a factor imports an authority to sell according to the usages of the trade, at his discretion as to the time. But the consignor may, at the time of the shipment, or afterwards, if before sale, impose terms as to time and price, to which the factor must conform. But if the factor, in consideration of such consignment, made advances or incurred liabilities for the owner, he has no right, by subsequent instructions, to control the factor. If the advances and liabilities have been incurred on account of the consignment, and before an assent to the directions of the owner in respect of the time of sale or price, the factor has thereby acquired a special property, and may sell so much as will reimburse or discharge the liability.

The owner of the property has undoubtedly the right to impose terms on his commission merchant as to the time of sale or the price, or both. The restriction upon that general right is that, after he has obtained money, credit, or goods, from his agent, on the property, he cannot require the agent to hold until he orders a sale unless the owner shall repay the advances or take up the liability, for these were made or incurred on the faith of the right implied in such general consignments of getting the money or meeting the liabilities by a discretionary sale.

But if at the time of the shipment, or before the consignor notifies the factor that he must hold until further orders, he orders goods, or draws against the consignment, and the factor consents to the proposition, it establishes a special relation between the parties, different from that we have just been considering.

If Cotton & Co. gave to Hiller & Co. instructions in refer-

ence to the cotton at the time of the shipment, and at the same time ordered goods and otherwise obtained advances, and Hiller & Co. agreed to receive the cotton and grant the accommodations, and such was the course of their business, then Hiller & Co. were under an obligation to hold the cotton, and it is no excuse that at the time of sale they had made large advances. It is entirely competent for the factor and country merchant to agree that the former will make advances on cotton consigned and to be consigned, and that he will withhold it from the market until ordered to sell. The factor has a special property or lien on the cotton for his indemnity. Such a transaction partakes of the nature of a loan on the pledge of the consignment. It is analogous to a mortgage with power of sale (Drinkwater v. Goodwin, 1 Cow., 256), except that the consignor has reserved the right to say when the sale shall be made. But it is said that such a reservation is too indefinite, and leaves it in the power of the consignor to postpone for six months, for a year, or a longer period, the reimbursement of the factor by a sale. It is not more indefinite than the discretion of a factor as respects the time of selling a general consignment. He may wait on the market a reasonable time. The shipper, where the risk is on him, may instruct the factor to wait his pleasure as to the time. Nor would it be proper to sell until his shipper's will was made known.

But, as having an important bearing on this point, it should be noted in this connection that these shipments were begun early in October, and were made in small lots, at short intervals, up to the time of the sale, in January, and that the shippers were constantly giving notice that the cotton must be kept from market.

In these circumstances, and in this course of dealing between the parties, it was incumbent on the factors, if they were disinclined further to hold the cotton, to inform the consignors that they could not or would not hold longer, so as to give them the opportunity to pay off the advances and assume entire

control of the cotton. Cotton & Co. could not require Hiller & Co. to hold beyond a reasonable time. What would be a reasonable time must be gathered from the dealings of the parties and the attending circumstances. It was in proof that one of the appellants, the managing partner, had an interview with one of the appellees shortly before the sale in reference to holding the cotton for a better market, and that the appellee agreed to do so. Hiller & Co. were authorized, if they needed money, to hypothecate the property, or that appellant would raise the money and pay them off. We think, in view of all the circumstances, that Hiller & Co. might rightly sell the cotton, without notice to the appellants to come forward and pay them their advances. Brown & Co. v. McGrau, 14 Peters, 495; Frothingham v. Everton, 12 N. H., 239. Did Cotton & Co. ratify the sale? It is the duty of the principal, when informed of the unauthorized act of his agent, promptly to disavow it. The letter of the managing partner of the firm of Cotton & Co. promptly, after receipt of notice of sale, disapproved it and notified the appellees that he would hold them responsible. The letter is subscribed by W. R. Cotton, for his firm. It is addressed to M. Hiller, for the reason, we may well suppose, that with him the business was chiefly conducted, and perhaps for the further reason that, shortly before the sale, a conversation was had with him about holding the cotton. The proceeds were applied to the credit and the advances. The only fact tending to show confirmation was the payment by W. R. Cotton, in March, out of his individual cotton, of the small balance of $392.

But it is proved that he still complained of the sale, did not waive any claim on account of it, and most reluctantly paid the balance out of his personal means. It is not shown that he has abandoned the position taken in his letter, expressing dissatisfaction and asserting a claim on account of disobedience of instructions. Peters v. Ballaster, 3 Pick., 495; Meyor Weis & Co. v. Morgan, 51 Miss., 21. We are not satisfied, in

view of all the special facts in this case, that the verdict of the jury is "unconscientious or unjust," and that a different result would be reached on a second trial.

Judgment reversed and bill dismissed.