Reed, P. J.,
delivered the opinion of the court.
The first allegation to be considered, upon which the plaintiff based his claim for relief, is each of said vendees suecessivety agreeing to pay all outstanding indebtedness of its vendor; “ * * * that Richardson Drug Company at the time of said, several transfers ivas informed thereof and agreed to present its account for goods theretofore furnished to Dunagan $ Miller to said Miller Benson and each of the successive vendees; that thereby Dunagan ¿Miller were released from liability, and it was the duty of Richardson Drug Company to look to Miller Benson and said vendees successively for payment of any liability of Dunagan Miller to Richardson Drug Company.” It will be observed that each of the facts stated are explicitly denied in the answer, but if admitted or fully established by competent testimony, they are insufficient to operate as a release or afford' ground for equitable intervention, and the legal conclusion of the pleader, “ that thereby Dunagan & Miller was released from liability,” was a mistaken one. The law of novation or substitution seems so elementary and so generally understood that if the foregoing was not relied upon as a release, I should ask pardon *314 for stating the rules controlling it and citing authority. In order to relieve Dunagan & Miller from liability to the Drug Company, the three parties must have met and agreed. Miller & Benson and their successors must have assumed and promised to pay the debt of Dunagan & Miller, the Drug Company must have accepted them in the place of Dunagan & Miller, and released and discharged Dunagan & Miller; otherwise there was no substitution and no consideration. .The release of Dunagan & Miller would be the consideration. In this case it is not claimed that there was a release ; consequently no consideration-; hence no substitution. 1 Parsons on Contracts, 227-228; Pothier on Contracts, part 3, ch. 2, art. 4; Tatlock v. Harris, 3 T. R. 174; Thompson v. Percival, 5 B. & Ad. 925; Heaton v. Augier, 7 N. H. 397.
The allegation in the complaint is insufficient. It is that the “Richardson Drug Company at the time of the said several transfers was informed thereof and agreed to present its account for goods theretofore furnished to Dunagan & Miller to said Miller '& Benson and each of the successive vendees; that thereby Dunagan & Miller were released from liability.” Admitting it as stated, and we have the fact that Miller & Benson agreed with Dunagan & Miller to pay the debt of the latter to the Richardson Drug Company; that the company knew it and agreed to present the account to it. It was a matter of indifference to the Drug Company who paid, so that the debt was paid, but, there being no substitution and no release, the liability of Dunagan & Miller was not extinguished nor in any manner changed. The fact that Miller, of the old firm, became a member of the new firm, the successor, in no way changes the case. “ When a new firm takes upon itself the liabilities of the old and a-creditor with knowledge of that fact agrees to aecept the new firm as debtor and release the old firm,” the substitution is made, not otherwise. Shaw v. McGregory, 105 Mass. 96; Silverman v. Chase, 90 Ill. 37. “The acceptance of the note of an individual partner after dissolution is not enough without an express agreement.” Leabo v. Goode, 67 Mo. 126; *315 Horintz v. Holthouse, 85 Pa. St. 235. “ There must be an absolute extinguishment of the original debt.” Caswell v. Fellows, 110 Mass. 52. “ The creditor can look to the first partnership in its entirety unless he has consented or agreed to release the retiring partner.” Story on Part., sec. 158; Cuxon v. Chadley, 3 B. & C. 591.
The next matter for consideration is the paper claimed to be a release to Dunagan, given by Sampson & Millett, the attorneys of the Drug Company, while they were prosecuting the claim against him to judgment. The paper, if authorized, would operate as a full release and discharge of the judgment when obtained, and of all claims merged in it. The testimony in regard to authority is very peculiar and unsatisfactory. Before it was admissible in evidence, special authority from the Drug Company to its attorneys to discharge Dunagan & Miller from the indebtedness should have been shown. No authority whatever was shown. One Weller, as shown by the evidence, was the traveling salesman of the company. What the extent of his agency was, was not shown clearly. The release and discharge of a debtor to the firm without payment was not within the delegated authority of a traveling salesman, and must have been specially conferred. It is not claimed that Sampson & Millett had any authority from the Drug Company to. release Dunagan & Miller. The only explanation of the affair Sampson could give when testifying in the case was: “The paper attached to interrogatories is in my handwriting. I did it because of communications received from Weller, verbally and in writing, from which I understood it was his desire, and knowing the authority to act for the Drug Company I supposed it was their desire to hold Dunagan harmless. I signed said paper and thought I had full authority and instructions to do so. Told Dunagan if he would co-operate with us to make claim out of Jones we would never trouble him with the judgment. * * * He said if I would give him such paper he would let the judgment go, to help us collect from Jones, and otherwise he would file an answer and fight us.”
*316 • Weller testified, denying any knowledge of the paper or any connection with it. He said: “Do not know of any authority being given to Sampson & Millett to do anything about said suit except such as would usually devolve upon attorneys by virtue of their general retainer. Sampson & Millett had no authority to sign name of Drug Company to agreement to save Dunagan harmless, as it was contrary to the policy of the house to allow any one not a member of the firm to sign firm name to any agreement. I never saw any such agreement. * * * No agreement was made to release any of the parties until the accounts were settled. I never heard of such a proposition as that mentioned in cross interrogatory 10. * * * Sampson & Millett asked me some questions at various times, which I answered, but I gave them no authority to act for St. Louis house. In fact, I had no authority to give.”
James Richardson, Jr., secretary and treasurer of the Drug Company, testified: “ The Drug Company never promised to hold or save harmless Dunagan & Miller from said judgment. The suit was brought in district court of Arapahoe county. Sampson & Millett were attorneys of record for Drug Company. The Drug Company never authorized Sampson & Millett to agree with Dunagan & Miller that such judgment would not be enforced or that they would be held harmless, if they permitted judgment to go against them. If Sampson & Millett so agreed, it was not with the knowledge or consent of Drug Company. * * * The Drug Company never agreed to release Dunagan & Miller and never presented said account to Miller & Benson or any alleged successive vendees. Drug Company never admitted that Dunagan & Miller were not responsible for payment thereof and never represented that it would not undertake to collect said judgment, and never acknowledged that Jones Drug Company was the vendee actually to promise to save harmless Dunagan from said judgment. * * * Sampson & Millett had no authority to do any acts in suit against Dunagan & Miller except such as usually devolve upon attorneys by *317 their general retainer. They had no authority to agree to hold Dunagan harmless. If they so agreed about August 29 th, 1888, it was not ratified by Drug Company.”
There is a rather peculiar confusion, if not shuffling, shown by the letters of the different parties. The letters of the Drug Company are peremptory and specific to prosecute the suit to judgment against Dunagan & Miller, — say nothing in regard to a release whatever. The paper purporting to be a release, executed by Sampson & Millett, was dated August 29th. On the 17th of the same month, Sampson & Millett wrote that Dunagan & Miller claimed they had a release executed by him for the company, and asking: “ Had you authority to bind the house in the face of their refusal to agree to it, and was there any legal consideration that would make it binding ? ” In letters of same day to Drug Company, Sampson & Millett say : “We have always understood this release was signed by Weller, but now they claim it was signed by the company. The straight cut for you to take is to sue Dunagan & Miller. * * * We do not know what Weller agreed, nor whether he had authority to bind you. If they have a legal release, the claim will be defeated on the trial.” Although Sampson & Millett say Dunagan & Miller claimed a release made by Weller, Dunagan, as late as the 16th or 18th of August, made no such claim. On those dates he writes the Drug Company as follows (August 16th) : “ Since writing you yesterday I have had a talk with Sampson & Millett and they gave me to understand that your instruction is to make that money off of me in that suit.” On the 18th: “ Since writing you I had a talk with Sampson and he says their instructions are to make me pay that account as they know no one else in the transaction.” After that date nothing in regard to a release appears, nor any letter from Weller; yet, on the 29th, Sampson executed the release in the name of the company, “because he thought Weller wished him to.” It is clear, not only from the evidence of Richardson and Weller, but also from the correspondence and attending circumstances, that Sampson & Millett *318 made the release without the authority of either the Drug Company or Weller. Sampson did not testify to any authority for making it, but that they made it in the exercise of their own judgment.
The question is, was the release of any legal force, — one they had authority to make by virtue of their employment as attorneys? The authorities are all apparently against it. The same question, substantially, was decided in the supreme court of this state in Hallack v. Loft, 19 Colo. 74, when the court said: “ The agreement of an attorney to surrender or compromise any substantial right of his client is beyond the scope of his employment and is not binding without express authority. His duty is to maintain, not to sacrifice, his client’s cause.”
In Howe v. Lawrence, 2 Zab. (N. J.) 99, the chief justice said: “A stipulation to waive a judgment was not an agreement for the conduct of the case. It was a deliberate surrender of his client’s right, which I conceive counsel had no power to make, and which, if he had the power, justice would never permit to be enforced. Either the agreement must have been entered into by counsel of the defendant under some misapprehension of its character, in which event it is not his agreement, or it must have been founded on some corrupt consideration, in which event it is utterly void.” See Weeks on Attys., sec. 218-19; Mechem on Agency, sec. 813.
An agreement not to enforce a judgment is not binding nor an estoppel. Smith v. Tyler, 51 Ind. 512. It was in effect a discharge of the debtor from the indebtedness, being prosecuted to judgment. A discharge by an attorney without special authority, except upon full payment in money, is void. Moulton v. Bowker, 115 Mass. 36; Authur v. Ins. Co., 78 N. Y. 469; Barrett v. Railroad Co., 45 N. H. 635; Beers v. Hendrikson, 45 N. Y. 665; Feshune v. Colton, 2 Stock. (N. J.) 21; Lewis v. Duane, 36 N. E. Rep. (N. Y.) 335; Hafford v. Phillips, 13 M. & W. 702.
Authorities might be indefinitely multiplied showing that, *319 without special authority to execute a release was alleged and proved, the pretended release was absolutely void. There being no question in regard to the indebtedness of Dunagan & Miller to the Drug Company, and no novation and substitution, there was no question of the right of the company to collect from Dunagan & Miller, the release pleaded being a nullity. The fact that Miller & Benson and their several successors had agreed with Dunagan & Miller to pay the debt was a matter of contract with which the Drug Company had no concern. It was the duty of Dunagan & Miller to see that it was paid, and the firm relieved of liability. Failing to do so, if themselves obliged to pay it, they had their remedy, and could reimburse themselves from their successors.
It is a well settled rule that a court of equity will not enjoin the collection of a judgment at law when there was no evidence of good defense that the defendant, for reason beyond his control, had been unable to interpose. See Story’s Equity Juris., sec. 887, and cases cited, and sec. 890. Mr. High, in sec. 117, states the rule to be: “It must satisfactorily appear that the judgment is mauifestty wrong and that upon a trial a different result would be produced, and unless these facts satisfactorily appear, the bill cannot be maintained. The complainant must be able to impeach the justice of the verdict at law.” The question is, if the judgment were set aside and a new trial granted, would complainant be entitled to succeed upon the showing made in the equity case? See, also, George v. Tutt, 36 Mo. 141; Duncan v. Gibson, 45 Mo. 352; Hazeltine v. Rensch, 50 Mo. 50; Taggart v. Wood, 20 Iowa, 236; Ableman v. Roth, 12 Wis. 81; Surdsey v. Sellers, 26 Miss. 173; Cotton v. Hillier, 52 Miss. 7. From all that appears in the case, it shows that if the default had been set aside and a trial had, the judgment would have been the same.
It is also a well established rule that courts of equity will seldom interfere to enjoin a judgment at law where the defendant was served and allowed a judgment by default. *320 There is one feature in the decree of the court that is rather peculiar. After decreeing a perpetual injunction, enjoining the enforcement of the judgment and the issuing of aujr process upon it, restraining the enforcing of the writ of execution and ordering its return, the court proceeds: “That plaintiff may within twenty days from this date exhibit his petition to the court together with a copy of his proposed answer, and upon notice to Drug Company, apply to the court for an order vacating said judgment and permitting the said Dunagan & Miller to answer upon the merits in said action.” As to the other party, the one aggrieved, the decree appears to be iron-bound, and it is precluded from proceeding in any manner; and as the plaintiff had secured a perpetual injunction restraining the collection of the judgment, he could hardly be expected to make application, have the former judgment vacated, a trial upon the merits, with the probability of an unenjoined judgment.against him.
The decree of the district court will be reversed and cause remanded with instructions to dissolve the injunction and dismiss the bill of complaint.

Reversed.