[Civ. No. 4404. Third Appellate District.—January 14, 1932.]

GOLDEN WEST CREDIT & ADJUSTMENT COMPANY (a Corporation), Appellant, v. VERNE S. WILSON et al., Respondents.

Jesse A. Mueller for Appellant.

Ray Manwell and Loyd E. Hewitt for Respondents.

PLUMMER, J.—The plaintiff began this action against Verne S. Wilson and George D. Karsch, individually, and as copartners doing business under the name of Wilson & Karsch, to recover on an assigned claim for goods, wares

and merchandise sold to the defendants while doing business as copartners under the firm name and style of Wilson & Karsch.

The complaint, so far as this appeal is concerned, is based upon the count set out herein, wherein it is alleged that the plaintiff's assignor sold to the defendants, goods, wares and merchandise in the sum of $1996.23. Judgment went in favor of the plaintiff as against the defendant Karsch, and in favor of the defendant Wilson as against the plaintiff. From this portion of the judgment the plaintiff appeals.

The action is based upon a claim assigned to the plaintiff by the Carbide & Carbon Chemicals Corporation. The complaint sets forth that at the time the indebtedness was incurred the defendants were doing business under the firm name of Wilson & Karsch, and purchased from said Carbide & Carbon Chemicals Corporation, goods, wares and merchandise, upon which there remained due the sum hereinbefore stated, and that the account had been assigned and transferred to the plaintiff in this action. The defendant, Verne S. Wilson, admitting the purchase of the goods, and admitting the nonpayment thereof, set forth that the copartnership of Wilson & Karsch was dissolved on or about the twenty-ninth day of March, 1929; that in the dissolution of the copartnership of Wilson & Karsch, the defendant Karsch agreed to assume all the liabilities of the copartnership; that the Carbide & Carbon Chemicals Corporation was advised of the dissolution of the copartnership, and thereafter relinquished the said Verne S. Wilson from any and all liability on account of the indebtedness.

The court found as follows: That prior and up to the twenty-ninth day of March, 1929, the defendants Verne S. Wilson and George D. Karsch, were associated as copartners under the firm name and style of Wilson & Karsch. The court then proceeded to find that the indebtedness was incurred just as herein stated, and that there was a balance due upon said accounts in the sum of $1996.23, and also found, as stated, that the copartnership of Wilson & Karsch was dissolved on or about the twenty-ninth day of March, 1929, and that "the Carbide & Carbon Chemicals Corporation was advised thereof, and they relinquished the said Verne S. Wilson from any and all indebtedness owing at

said time to said corporation, and the said Carbide & Carbon Chemicals Corporation, a corporation, accepted the credit of said George D. Karsch, individually, . . . in the place and stead of said copartnership, and they then and there discontinued their account with the said Verne S. Wilson, of the said firm of Wilson & Karsch. . . .; that the said obligation was assumed by said George D. Karsch with the consent of said Carbide & Carbon Chemicals Corporation, and the said Verne S. Wilson was then and there, on or about the 29th day of March, 1929, discharged from the said indebtedness by the said Carbide & Carbon Chemicals Corporation''.

The stipulation of counsel appearing in the record is to the effect that there is still unpaid on account of the goods, wares and merchandise purchased by the copartnership of Wilson & Karsch, the sum of $1996.23. ■ The only question presented for our consideration upon this appeal is whether the finding of the trial court to the effect that Verne S. Wilson was discharged from said indebtedness, is supported by the evidence. On the part of the appellant it is claimed that there is no evidence in the record showing that the Carbide & Carbon Chemicals Corporation ever released the defendant Wilson, or accepted Karsch as their sole creditor to whom they should look for payment of the sum admitted to be still due.

In support of the contention that the defendant Wilson had been released, the defendant introduced in evidence the following letters:

"March 20, 1929.

"Carbide & Carbon Chemicals Company,
 "Pyrofax Division,
 "San Francisco, Calif.

"Gentlemen: I wish to inform you that I have purchased the interest of Verne S. Wilson, of the firm of Wilson & Karsch. This includes all assets and all liabilities. I will continue to do business at the present address.

"Trusting this meets with your approval, I am,
 "Very truly yours.
 "(Signed) GEORGE D. KARSCH.''

The reply to this letter is in the following words:

"Pyrofax Division, Carbide & Carbon Chemicals Corporation,
"Adams Grant Building,
"114 Sansome Street.
"March 26, 1929.
"General Office, San Francisco, Carbide and Carbon Building, 30 East Forty Second Street, New York.
"Mr. George D. Karsch,
"304–3rd Street,
"Marysville, California.
"Dear Mr. Karsch: Attached is new dealer sales and service agreement, for your signature. Inasmuch as the firm of Wilson & Karsch has been dissolved, we are hereby canceling the agreement entered into with that firm.
"Yours very truly,
"C. V. O'Kane.
"Carbide & Carbon Chemicals Corporation."

Thereafter, C. V. O'Kane wrote a second letter to the defendant Karsch, which is as follows:

"Pyrofax Division, Carbide & Carbon Chemicals Corporation,
"Adams Grant Building,
"114 Sansome Street, San Francisco.
"General Office, Carbide and Carbon Building, 30 East Forty Second Street, New York.
"March 28, 1929.
"Wilson and Karsch,
"304–3rd Street,
"Marysville, California.
"Gentlemen: This will cancel your gas contract with us, entered into in November, 1928. Will you please return to this office the copy of the contract which you hold in your files.
"Yours very truly,
"C. V. O'Kane,
"Carbide & Carbon Chemicals Corporation."

A subsequent letter, undated, transmitting a contract for Karsch to sign, appears in the record as follows:

"Pyrofax Division, Carbide & Carbon Chemicals Corporation,
 "Adams Grant Building,
 "114 Sansome Street.
"General Office, San Francisco, Carbide and Carbon Chemicals Corporation Building, 30 East Forty Second Street, New York.

"Mr. George D. Karsch,
 "304—3rd Street,
 "Marysville, California.

"Dear Mr. Karsch: Enclosed is a new gas contract, which will take the place of the one made out in the name of Wilson and Karsch. If you will sign this contract, I will put it through in the regular manner, and will send you your copy of it as soon as Mr. Hirst signs it.

"Yours very truly,
"C. V. O'KANE,
"CARBIDE & CARBON CHEMICALS CORPORATION."

By the contract forwarded with the foregoing letter, it appears that the defendant Karsch was appointed the sole dealer for the Carbide & Carbon Chemicals Corporation for certain territory therein mentioned, with the sole right to handle the products of the corporation as described in the contract. This contract contained, among other things, the following: "Seller and dealer mutually agree that this agreement shall be in force and effect until terminated by either party at any time, upon thirty days written notice to the other party; that such termination of this agreement will cancel all orders for goods which may not have been delivered prior to the date of the receipt of notice of such termination; but does not release the dealer from payment of any sum which dealer may then owe the seller."

The record does not contain any copy of the contract by which the firm of Wilson & Karsch was appointed the sole dealer for the handling of products manufactured by the Carbide & Carbon Chemicals Corporation, for the territory therein described, but the argument presented appears to be upon the theory that the form and substance of the contract entered into with the copartnership and the contract entered into with the defendant Karsch were similar in form and substance. It will be observed that neither in any

of the letters written by any of the agents or employees, nor in the contract sent to the defendant Karsch for his signature, and signed by him, was there any mention of any release whatsoever of Verne S. Wilson from any obligation on his part to pay the balance due by the copartnership, to the Carbide & Carbon Chemicals Corporation, for goods, wares and merchandise sold and delivered to said copartnership prior to its dissolution; nor is there anything said in these letters, nor in the contract forwarded to Karsch for his signature, that the Carbide & Carbon Chemicals Corporation would look to him solely for payment of the old account, or would accept him as its sole debtor. Nothing was ever written by the Carbide & Carbon Chemicals Corporation to Verne S. Wilson, releasing him from liability on account of the indebtedness of the copartnership, nor does the record show that any consideration ever passed from either Wilson or Karsch, to the Carbide & Carbon Chemicals Corporation, as an inducement for releasing Wilson and accepting Karsch as the sole debtor.

The theory of the defense in this action appears to be that the canceling of the contract that had existed between the Carbide & Carbon Chemicals Corporation and the partnership of Wilson & Karsch, and then the execution of a subsequent contract whereby Karsch was authorized to handle the products manufactured by the Carbide & Carbon Chemicals Corporation, amounted to such release. It is true that from the date of the dissolution of the partnership, and notification thereof, the Carbide & Carbon Chemicals Corporation continued to sell goods to Karsch alone, without any reference to the indebtedness of the copartnership, other than as some of its employees having charge of collections, insisted upon payment of the old account, and mentioned the subject quite frequently to the defendant Karsch.

The record shows that after the dissolution of the copartnership, one of the traveling salesmen of the Carbide & Carbon Chemicals Corporation visted Marysville and looked over the books kept by the copartnership of Wilson & Karsch. In the respondent's brief there is this statement: "That prior to the dissolution of the copartnership and the cancellation of the old agreement and the execution of the new agreement, the said copartnership sent one Mr. Anderson to audit the books of said copartnership and take

down a list of the book accounts of said copartnership; that all of the acts of the agent herein were condoned by the proper authorities of said corporation, by the cancellation of the old agreement and the execution of the new agreement." The testimony of the defendant Karsch, however, is directly contrary to this statement. It is as follows: "I showed it (agreement of dissolution) to Mr. Martin immediately after the dissolution was made. It was quite some time, possibly two weeks or maybe three weeks; I don't know the exact time, but very shortly after the dissolution was made and agreed upon Mr. Anderson was sent up here to go over the books and check up just exactly how the account stood and what obligation I was assuming, and at that time I showed him the copy of the contract." Anderson's testimony on this point is as follows: "I called because the account was past due—that was the reason I had gone up there, and after I talked to him a few moments, he showed me the dissolution of the partnership between him and Mr. Wilson and told me that he was going to continue the business himself. . . . After we had talked the matter over for some length, I told him it would be advisable for him to make arrangements which would enable him to carry on the business in such a way that his accounts accruing after that date would be paid off as fast as possible."

The letter to which we have referred notifying the Carbide & Carbon Chemicals Corporation of the dissolution of the copartnership was dated March 20, 1929; as presented in the record the dissolution of the copartnership is dated March 29, 1929. Anderson's testimony is to the effect that he visited Marysville and looked over the accounts referred to, some time in April, 1929.

The record shows that over the objection of the appellant the defendant Karsch was allowed to testify as follows (after testifying that it was within ten days after he and Wilson had dissolved partnership, and that he, Karsch, had taken over the business): "Q. To whom did you make this suggestion? A. To Mr. Martin and to the Carbide-Carbon Company. Q. Go ahead? A. That if it was satisfactory to them to accept me on the account as it stood to-day, and release Mr. Wilson, that I would carry on and represent them in the district. Q. Well, what happened after that? What did he say? A. Mr. Martin expressed himself as

believing that it could be arranged with the Carbide-Carbon Company, and if it could be, that they would issue me—cancel the old contract and issue me a new contract and allow me to conduct the business." The witness also testified that he had a conversation with Mr. Hirst in San Francisco; that it was shortly after he wrote the letter announcing the fact of the dissolution of partnership. "Mr. Hirst also told me that the Carbide-Carbon Company would take me as a creditor on the old account, and that I was to pay the old account off just as quickly as possible, and without allowing the new account to run over a period of more than sixty days."

Mr. Martin, on behalf of the plaintiff, testified as follows: "I had a conversation with Mr. Karsch about the time of the dissolution of the copartnership; I had the conversation in Sacramento; I don't remember the exact date; it was about the time that Mr. Karsch wanted to take the business on his own shoulders, and we had a general conversation as to the policy that would prevail as to the future sales activity to be engaged in by Mr. Karsch, and Mr. Karsch said at that time that the accounts could be taken care of, the pressing accounts; there was money and assets available which would enable him to clear off the old account, and that there was money available, as I understood it; and that there could be a payment of $500 or $600 made immediately to reduce the pressing account." Mr. Martin further testified that he never told Mr. Karch that Mr. Wilson or anyone else would be released from this indebtedness; also testified that he had no authority to release anyone from the account.

The record further shows that Martin was a sales representative of the company; that Hirst was the office manager of the sales department; and that Anderson was assistant credit manager of the Carbide-Carbon Chemicals Corporation.

There is nothing in the record to show that the corporation ever took any action releasing Mr. Wilson from his obligation to the company, nor is there anything in the record showing that any of the persons named had any authority to execute a release to anyone, or that any release was executed in favor of Mr. Wilson, or that anyone had any conversation or dealings with Mr. Wilson

on the subject. Nor is there anything in the record specifically indicating that there was any attempt on the part of the company to release either Mr. Karsch or Mr. Wilson from any of the obligations of the old contract, other or further than to the extent that the old contract was canceled and a new contract entered into with Mr. Karsch by which he was authorized to continue the business. The oral testimony which we have set forth simply indicates that some of the employees of the company were under the impression that such an arrangement could be made.

Our attention has been called to sections 1531 and 1541 of the Civil Code, relating to the subjects of novation and release. Section 1531, referring to novation, defines it as the substitution of a new obligation between the same parties, with intent to extinguish the old obligation. Also, by the substitution of a new debtor in place of the old one, with intent to release the latter. Also, by the substitution of a new creditor in place of the old one, with intent to transfer the rights of the latter to the former. In this case there was no substitution of a new debtor. Karsch was an old debtor, and was individually liable for the amount owing. The corporation received nothing from Mr. Wilson or Mr. Karsch to induce a release of Mr. Wilson. Wilson was at no time a party to any of the transactions. The record does not show that he ever asked to be released. The testimony shows simply that about the time, or shortly after the dissolution, one of the corporation's employees believed that it could be arranged to release Wilson, and that about ten days after the dissolution of the copartnership, the office manager of the corporation stated that they would take Karsch as a creditor. Nothing was ever executed after this promise. Nothing was ever done in relation to this promise by any agent of the corporation or officer thereof authorized to execute releases, nor was any release ever executed and delivered to Mr. Wilson.

Section 1541 of the Civil Code reads as follows: "An obligation is extinguished by a release therefrom given to the debtor by the creditor upon a new consideration, or in writing, with or without a new consideration."

The written instruments introduced in testimony do not purport to release Mr. Wilson. No reference is made therein to the subject of release; nor is our attention called

to any writing which can be construed as referring to the subject of release. Nor is there any evidence of any consideration moving from Mr. Wilson to the company to procure his release. So far as Mr. Karsch was concerned he was already obligated to pay the indebtedness, and as a partner of the copartnership, he was obligated to carry on the business. The release in writing must expressly relate to that subject. (*Rogers* v. *Kimball,* 121 Cal. 247 [53 Pac. 648, 650].) We find the following in the opinion in that case: "The want of consideration is not obviated by section 1541 of the Civil Code. That section provides that an obligation is extinguished by a release thereof given to the debtor by the creditor upon a new consideration or in writing, with or without a new consideration. We think that this provision applies to express releases given with intent to extinguish the obligation, and not to things which might have that result in a round-about way." To the same effect is the case of *Upper San Joaquin Irr. Canal Co.* v. *Roach,* 78 Cal. 552 [21 Pac. 304, 305], where in referring to releases, the court says: "We think that this provision applies to express releases given with intent to extinguish the obligation, and not to things which might have that result in a round-about way." In that case it was sought to establish a release by indirection, just as was sought in this case by the introduction of written instruments containing reference only to other subjects.

Again, as bearing upon the oral testimony and its sufficiency to support a finding of release we may call attention to the case of *Stewart* v. *Mozzetti,* 63 Cal. App. 409 [218 Pac. 630], where the question of novation was being considered. It is there said: "It is sought to bring this case within paragraph 2 of section 1531 of the Civil Code, which provides that novation may be made by the substitution of a new debtor in place of the old one, with intent to release the latter. Novation is made by contract, and is subject to all the rules concerning contracts in general. (Sec. 1532, Civ. Code.) An attempt is made to show novation by the testimony of the defendant and other witnesses, which testimony is to the effect that a soliciting agent of plaintiff's assignor agreed to the substitution of a new debtor in place of the old one. There is no showing whatever that the agent had any authority to so bind his principal nor

is there any showing that, even admitting the testimony of the defense relating to novation, as true, the principal ever consented to, or ever accepted such substitution.'' There is not a word of testimony in the record showing that the principal in this case ever consented to any release of Wilson, or the substitution of Karsch alone as the debtor of the company in relation to the old account. All that the principal ever did was to issue a contract to Karsch authorizing him individually to go on with the business and continue to handle the products of the company in the district mentioned in the contract. We do not know the terms of the old contract, but if they correspond with the terms of the new contract, it would be to the effect that the cancellation of the contract does not release from obligation to pay all indebtedness then existing.

That the transaction referred to in the record is insufficient to constitute a novation also appears from the holding of the court in the case of *Carpy* v. *Dowdell*, 131 Cal. 495 [63 Pac. 778, 779], where there appears to have been an agreement to pay the debt of another, and consented to by the bank involved in that case, was held insufficient to effect a release of the principal debtor. The court said: ''We cannot find an intimation in the contract that the bank intended to release defendants from the notes and mortgages and look to Chevalier & Company alone for the money due upon them, and the contract has no such legal effect.'' The intention that the instrument shall work a release must be evidenced by the contract, and in the case just referred to, as well as in the case at bar, the written instruments evidence no such intent.

 That sales agents, credit managers and employees whose duty it is to carry on the business of a corporation, have no authority as such to grant releases to debtors, is established by the holding in the following cases: *Burroughs* v. *Harris*, 99 Cal. App. 604 [279 Pac. 216]; Burdick on Partnership, p. 257; *Richardson Drug Co.* v. *Dunagan*, 8 Colo. App. 308 [46 Pac. 230]; *Thomas* v. *Anthony*, 30 Cal. App. 217 [157 Pac. 823]; 2 C. J., p. 645. Other cases might be cited, but we deem the foregoing sufficient.

As heretofore stated, the admission of the parties and the findings of the court show that there is still due on the old account the sum of $1996.23, and that if the defend-

ant Wilson has not been released from his obligation to pay the old account, judgment should be entered against him as well as against the defendant Karsch. In view of which it follows from what has been said herein that the finding of the court as to the release of Wilson is unsupported and does not support the judgment to the effect that the plaintiff should take nothing as against the defendant Wilson. And as it further appears that judgment should have been entered against both of the defendants, it is hereby ordered that the judgment in favor of the defendant Wilson be reversed, and the cause remanded to the trial court, with directions to enter judgment against him as well as against the defendant Karsch.

Thompson (R. L.), J., and Preston, P. J., concurred.