THE PEOPLES BANK OF PRATT, KANSAS, *a Corporation,* v. FRICK COMPANY, *a Corporation,* AND J. P. JONES.

(Filed September 10, 1903.)

1. **UNSUBSTANTIAL ERRORS—When Will be Disergarded.** Where the entire record discloses that the judgment is clearly right, unsubstantial errors which do not go to the merits, will be disregarded.

2. **FACTOR—Held, When.** A factor is one who receives and sells the goods of another on commission, and in order to be held as a factor, and not a mere agent or broker, must be in actual or constructive possession of the property sold.

3. **SAME—Powers—Lien.** A factor has no implied authority to sell or transfer his principle's property in payment of his own debts, nor has he any lien upon property the possession of which he acquired by wrongful methods or in bad faith.

4. **SAME—Agents.** An agent or factor has no implied authority to appoint sub-agents, or to delegate his powers; and persons employed by him in handling his principal's property do not become the agent of the principal, without the principal's consent.

5. **SAME—Unauthorized Acts, Confer no Rights.** An intermeddler who sells the personal property of another on credit and takes notes for the purchase price in his own name, and also a mortgage on the property securing said notes, acquires no lien on the

Peoples Bank of Pratt, Ks., v. Frick Co. *et al.*

property, and can confer none by assignment of the notes and mortgage to one who has notice of the facts.

6. **SAME—Rights Under Lien.** Where a factor has a lien upon notes in his hands belonging to his principal, for commission, he has no implied authority to assign said notes to his creditor or apply the same to the payment of his debts. In such cases he could only satisfy his lien by some proceeding recognized by law to fore-close his interest and extinguish the title of the principal.

7. **CONVERSION—Effect on Lien.** Where one wrongfully converts property upon which he has a lien, such lien is extinguished.

(Syllabus by the Court.)

*Error from the District Court of Garfield County; before John L. McAtee, Trial Judge,*

*Rush & Steen* and *C. H. Apt,* for plaintiff in error.

*Moore & Moore,* for defendants in error.

### STATEMENT OF FACTS.

In the year 1897, Frick Company, a corporation, was the owner of a Frick traction engine No. 5447, in the possession of Isaac Shockey, at Abilene, Kansas. Frick Company were manufacturers of and wholesale dealers in engines, thresher and mill machinery at Waynesboro, Pennsylvania. Shockey was a retail dealer in agricultural implements and mill machinery at Abilene, Kansas, and was the duly appointed agent of Frick Company. The appointment was in writing, and authorized Shockey to sell the Frick Company's goods on commission for cash or on credit, and required that in all cases of sales on credit, Shockey should cause the purchaser to execute notes payable to Frick Company, and have same secured by chattel mortgage upon the machinery sold. Shockey had no authority to appoint sub-agents for Frick Company, or to employ any persons for them or at their expense. The engine in question had been sold in 1893 by

Shockey for Frick Company, and on account of the purchaser failing to pay purchase money, the engine was taken back by Frick Company, and was in the possession of Shockey for resale. On June 25, 1897, one D. W. Blaine, who resided at Pratt, Kansas, and was a dealer in machinery, was in Garfield county, Oklahoma, and procured an order from one Edward Sutphen for the engine in question, at the price of $900, to be paid in installments. Blaine was acquainted with Shockey, and had first made inquiry of him as to whether he could supply such an engine, and at what price. On receiving Shockey's answer, he procured the order from Sutphen, and presented same to Shockey. Shockey accepted the order as agent for Frick Company, and shipped the engine to Sutphen at Enid, Oklahoma, where it was received by Sutphen, and with the assistance of Blaine, was started in operation. The price made by Shockey was $800; the price at which Blaine made the sale to Sutphen was $900. The order called for a twelve horse power engine. The one in question proved to be only a ten horse power engine. A few days after the engine was received by Sutphen, Shockey went to Garfield county and called on him for a settlement, but owing to the engine needing some repairs, Sutphen then refused to settle for same until the repairs were made. Shockey and Blaine had some agreement about a commission to be paid to Blaine by Shockey for, sale of the engine. Shockey returned to his home in Abilene, procured the repairs to be made on the engine, and sent the note and mortgage ready filled out to Blaine, to have executed by Sutphen. Blaine took the notes to Sutphen and procured him and his wife to execute the notes and a chattel mortgage on the engine securing them, also a real estate mortgage for additional

security. These notes and mortgages were executed July 10, and dated June 29, 1897. The notes were payable as follows: $200 to Shockey, $200 to Frick Company, $100 to Frick Company, $100 to Blaine, and two notes of $150 each to Frick Company. Blaine held these notes for some days, and failing to make satisfactory settlement of his commission with Shockey, he returned them to Sutphen, and they in the presence of each other destroyed all the notes and mortgages, and about the first of August, 1897, Blaine procured Sutphen and wife to execute a second series of notes for a total sum of $900, all payable to D. W. Blaine, and said notes were secured by a chattel mortgage upon the engine, and by a real estate mortgage. These mortgages were recorded in Garfield county, August 5th, 1897. At the time of this transaction, Blaine surrendered and marked cancelled one note for the sum of $100, which was in part for rebate on the engine, because it was a ten and not a twelve horse power, and in part to induce Sutphen to execute new notes. At this time the facts and circumstances within the knowledge of both Blaine and Sutphen were sufficient to bring to them notice that the engine was the property of Frick Company. Immediately after this second series of notes were executed, Blaine took them and went to Waynesboro, Pennsylvania, and called upon Frick Company and attempted to effect a settlement with them. He offered to assign the company the notes and mortgage executed by Sutphen, provided the company would guarantee payment of certain demands he claimed against their agent, Shockey. The manager of the company informed him that Shockey had notified it of the sale, and had stated that he, Blaine, was entitled to $50 for making the sale. The company of-

fered to pay him the $50, for Shockey, if he would turn over the Sutphen notes and mortgages. He refused to do this and returned home. Some correspondence then ensued, and Frick Company declined to recognize the authority of Blaine in the transaction, and demanded a settlement direct with Sutphen, and on September 16, 1897, Sutphen and wife executed to Frick Company two notes for $150 each, two for $165 each, and one for $170, and secured the same by a chattel mortgage on the engine, and also on certain real estate. These mortgages were recorded at once in Garfield county, Oklahoma, where the property was situated.

After all this had occurred, and with Blaine's full knowledge, he on January 7, 1898, assigned and delivered the notes executed to him in August by Sutphen to the Peoples Bank of Pratt, Kansas, the defendant in the court below, and plaintiff in error here. There were sufficient facts brought to notice of this bank to put it on inquiry as to the ownership of these notes. Blaine was indebted to the bank at that time over $1,400, and these notes were turned over to the bank and he received credit on his account for the amount. Stuphen failed to pay any of the notes given for the engine, and left the country. Frick Company then brought an action of replevin for the engine, basing its right to possession upon the mortgage executed by Sutphen for the purchase money on September 16, 1897. The Peoples Bank of Pratt, Kansas, was made defendant, and sets up the mortgage assigned to it by Blaine as a prior incumbrance, entitling it to possession. The case was first tried in the probate court of Garfield county, where judgment was rendered in favor of the plaintiff in error. Frick Company appealed to the district court, and the case was there tried,

resulting in a judgment for Frick Company, and the bank brings the case to this court.

Opinion of the court by

BURFORD, C. J.:  A number of errors are complained of relating to the admission and exclusion of evidence, and to the giving and rejection of testimony, but none of them go to the merits of the case.  If upon the entire record it appears that the judgment of the court is correct, and that in no state of the case should it have been otherwise, unsubstantial errors will be disregarded.  It is contended by counsel for plaintiff in error that Blaine was a factor representing Frick Company in the sale of the engine to Sutphen, and had a lien upon the notes taken for the purchase money for his compensation, and hence had a right to sell the notes to compensate himself and satisfy his lien.

The contention under the facts as proved does not contain a single element to commend it.  In the first place, Blaine was not the agent of Frick Company to negotiate the sale of the engine, but was the representative of Shockey.  Shockey was the agent of Frick Company to sell the engine, and had no power to delegate his authority or employ subagents, and charge Frick Company with their acts.  If Blaine had been the agent of Frick Company, he was without authority to take the purchase notes in his own name, and when he did so, he became the trustee of Frick Company, bound to deliver the notes to the corporation, or it could do as it did in this case, and elect to repudiate his entire acts and make a settlement direct with the purchaser.  Again, a factor has no lien unless he has possession of the property, and he must be in possession of the property which

he sells for his principal in order to constitute him a factor. In this case, Blaine never was in possession of this engine; it was shipped by Frick Company in 1892 to Shockey, at Abilene, Kansas. Shockey sold it to Hall Bros., who failed to pay for it, and Frick Company took it back, and it again went into the possession of Shockey for resale; then Shockey shipped it direct to Sutphen at Enid, who paid the charges on it and received it into his exclusive possession. He retained possession until it was found in the possession of Jones, who held it for the plaintiff in error.

If Blaine was in fact the agent of Frick Company for the sale of the engine, yet he would have no lien on the notes taken for the purchase money of the engine. A factor may have a lien, but in order to constitute a seller a factor, he must have possession of the property sold. The important difference between a factor and an agent is, that the agent need not have possession of the property of his principal, while the factor must be in possession. The lien of a factor belongs to the class known as possessory liens, and it is a well settled and universal rule that the factor must have either the actual or the constructive possession of the goods, in order that his lien may attach thereto. Blaine was never in possession of the engine, either active or constructive, and hence was not a factor, and had no lien. Neither could he have a lien upon the notes taken by him for purchase price of the engine, for it must necessarily follow that if he was not a factor in the sale of the engine, he could not be a factor in the handling of the notes and mortgage taken for the purchase price of the engine. The possession of a factor in order to entitle him to a lien on the property of the principal in his possession, must have been acquired lawfully, and in

good faith. Blaine does not stand in this relation, and the Bank of Pratt can stand no better than Blaine. Blaine was a mere employe or agent of Shockey; he negotiated the sale of the engine to Sutphen under an express agreement that Shockey was to remunerate him for his services, and he can look only to Shockey for his compensation. After the sale was made, and settlement made by Sutphen, as per instructions of Shockey, Blaine became dissatisfied about his compensation from Shockey, and at that late day entered into a questionable arrangement with Sutphen to cancel the notes and mortgage executed in favor of Frick Company, and execute notes in his own favor, in order that he might force such settlement from Frick Company as he might contend for against Shockey. His purpose is apparent from his letters and statements; and constitutes bad faith and unwarranted practices. Having obtained the notes in this manner, the law will treat him as a mere intermeddler, and he could obtain no lien.

A factor may, if not directed otherwise, sell on credit and take notes in his own name for his principal, but he cannot apply such notes to his own indebtedness, nor negotiate them without rendering himself personally liable for the debt due his principal; but a mere agent cannot take notes payable to himself, unless specifically so authorized by his principal, and where he does such wrongful act with the knowledge of the buyer, the principal may at his option either ratify or repudiate the agent's acts. It is clear, we think, that Blaine had neither actual nor implied authority to take the notes payable to himself. Sutphen did not owe Blaine anything, and he knew that Blaine was not the owner of the engine. The notes to Blaine were without considera-

tion, and the mortgage to secure them created no lien on the engine or other property. The whole scheme between Blaine and Sutphen was a sham and a delusion, and the Peoples Bank had notice of such facts as would put a reasonably prudent person on inquiry before they took the notes, and is in no better position to claim under the mortgage than Blaine himself.

If Blaine took these notes for Frick Company, and from his letters and oral statements this is the only reasonable conclusion, then he had no power or authority to sell or transfer them. He was not the agent of Frick Company for any such purpose, and his contention that he sold them to satisfy a lien he claimed on them for his commission is without any foundation. If he did take the notes and mortgage for Frick Company, then they became the property of Frick Company, and Blaine, being without authority to transfer or assign the notes, the Peoples Bank took no title, and Frick Company is entitled to possession under the terms of this mortgage, for the purpose of divesting the title of Sutphen by foreclosure.

On the other hand, if the Blaine notes are void for want of consideration or other cause, then the mortgage of the Frick Company is a valid lien, and it is entitled to possession under this mortgage. So in either event the Frick Company is entitled to the possession of the engine as against any of the parties to this controversy.

It is contended that Frick Company ratified the acts of Blaine in taking the notes in his own name. The facts do not support this contention. Blaine went to the office of Frick Company in Pennsylvania and offered to transfer the notes and mortgages held by him to the company, on con-

dition that the company would guarantee payment of the amount he claimed against Shockey for the sale of this engine and other services, and claimed that Shockey had violated an agreement to give him a Minnesota Chief separator for his services. Frick Company declined this proposition, and offered to allow him fifty dollars, the amount Shockey had directed them to pay on his account, provided Blaine would transfer the Sutphen notes and mortgage to the company. Blaine declined this offer, and after that he was notified by letter that his acts in the matter would not be recognized. This does not constitute the first principles of ratification, and we are unable to find any ratification in the evidence.

Counsel for plaintiff in error seek to invoke the familiar principle that where one of two innocent parties must suffer from the wrongful acts of a third person, that he who has put it in the power of the third person to perpetrate the wrong must be the loser. This rule has no application to the facts in this case. Frick Company never employed Blaine to sell its property, and the Peoples Bank are not innocent purchasers. The cashier of the bank who transacted the business with Blaine was informed that there was litigation concerning the notes he purchased, and that the property covered by the mortgage had never been the property of Blaine. He knew that Sutphen did not owe Blaine for this engine, and at the time he took the assignment of the notes and mortgage, the mortgage to Frick Company for the purchase price notes for the engine was on record in Garfield county, Oklahoma, where the property was situated. Blaine was indebted to the bank over $1,400, and the notes were credited on his account; two of the notes were past due, and

none of the notes were negotiable in form, so that under all the circumstances, the bank is not an innocent purchaser for value, and takes no better right than Blaine had.

The judgment of the district court is clearly right upon the facts as shown by a great preponderance of the evidence, and is therefore affirmed at the costs of the plaintiff in error.

Beauchamp, J., not participating in the decision; Gillette, J., absent; all the other Justices concurring.