## GAAR, SCOTT & Co. v. ROGERS.

No. 4066. Opinion Filed April 20, 1915.

(148 Pac. 161.)

1. PLEADING—Amendment—Effect. The effect of the original pleading is destroyed by the filing of an amended pleading, which is complete in itself, and does not refer to or adopt the original as a part of it.

2. APPEAL AND ERROR—Assignments of Error—Sufficiency—Rulings on Evidence. Assignment of error should point out the particular testimony admitted or rejected, to which objection is made. Specifications of error will not be considered unless they comply with rule 25 of this court (38 Pac. xi), which is as follows: Where the party complains on account of the admission or rejection of testimony, he shall set out in his brief the full substance of the testimony, to the admission or rejection of which he objects, stating specifically his objection thereto."

2. PRINCIPAL AND AGENT—Agency—Pleading—Presumption. A general allegation of an authorized agency, not denied under oath, will be presumed to be an agency with such power and authority as is charged in the pleading, and no further proof of the agent's authority will be required.

4.    PRINCIPAL AND AGENT—Delegation of. Authority—Right. The general rule of law is that an agent has no implied authority to delegate his powers to a clerk or subagent; and persons employed by him as clerk or subagent do not become the agent of the principal, without the principal's consent; and only upon extreme and unusual exigencies can an agent delegate his authority to a clerk or subagent to transact business for his princpal, which requires special judgment, discretion, and experience, without the consent of the principal.

5.    NOVATION—What Constitutes. Novation is the substitution, by mutual agreement, of one debtor or of one creditor for another, whereby the old debt is extinguished, or the substitution of a new debt or obligation for an existing one, which is thereby extinguished.

6.    NOVATION—Agreement to Substitution—Necessity—Proof. In order to establish the fact of novation by the substitution of a new debtor, it must be shown by a clear preponderance of the evidence that the three parties agreed to such substitution; that the new debtor assumed and promised to pay the debt of the original debtor; and that the creditor accepted the new debtor and released and discharged the original one.

7     PRINCIPAL AND AGENT—Unauthorized Acts of Agent—Ratification—Knowledge. Ratification must be with full knowledge of all facts. In order that a ratification of an unauthorized act, or transaction of any agent ·may be valid and binding, it is essential that the principal have full knowledge, at the time of the ratification, of all the material facts relative to the unauthorized transaction.

8.    APPEAL AND ERROR—Verdict—Evidence. Verdict should be set aside when there is no legal evidence to support it. "Where there is any evidence reasonably tending to support the verdict of the jury, it should not be disturbed by the Supreme Court; but, on the other hand, where, after a careful consideration of all the evidence in the case, it is found that there is no legal evidence to sustain the verdict, it is the imperative duty of the court to set it aside.

        (Syllabus by Robberts, C.)

            *Error from District Court, Jackson County;*

                *Frank Matthews, Judge.*

    Action by Gaar, Scott & Co. against W. D. Rogers. Judgment for defendant, and plaintiff brings error. Reversed, and remanded for new trial.

*John D. Rogers,* for plaintiff in error.

*Everett Petry,* for defendant in error.

ROBBERTS, C. This action is brought by plaintiff in error, hereinafter designated as plaintiff, against defendant in error, hereinafter designated as defendant, to recover on a promissory note.

To defeat recovery, the defendant pleads novation, by amended answer as follows:

"Comes now the above-named defendant, and for his amended answer to the petition of plaintiff alleges that the note herein sued upon by the plaintiff has been fully paid and discharged by said plaintiff by an oral agreement made and entered into at St. Louis, Mo., on or about the 1st day of July, 1907, whereby 'said plaintiff, Gaar, Scott & Company, acting by its *duly authorized agent,* Moses P. Johnson, did agree to release this defendant from further liability for the payment of said note'; that at the same time, as a part of the same transaction, one G. L. Walcott did, for a good and valuable consideration, promise and agree with said plaintiff, and this defendant, to pay said note, and said plaintiff, for and in consideration of such promise and agreement of said G. L. Walcott, did thereby expressly agree to relieve this defendant from any further liability for the payment of said note; that by reason of such mutual agreement, contract, and novation, said defendant has been fully released and discharged by said plaintiff from payment of the note herein sued upon, and defendant prays for judgment for costs."

Motions and demurrers attacking the original answer were filed, but they will not be considered, for the reason that the amended answer is complete in itself, and, therefore, supersedes the original answer. Plaintiff replied by general denial, unverified. The case was submitted to a jury. Verdict returned for defendant. Motion for new trial overruled. Exceptions noted. And plaintiff brings error.

It is not claimed that the contract of novation was entered into by the principal, or even the principal agent; but defendant

contends that in the absence of the principal agent, his clerk
or subagent made the agreement. The controlling question, there-
fore, is, Whether a clerk or subagent of the principal agent of
plaintiff had authority to enter into a contract of novation with
defendant, and if so, whether the transactions and circumstances
proven are sufficient in law to establish novation as claimed by
defendant?

For a better understanding of the case, we submit the follow-
ing as a concise statement of the evidence, and upon these facts
the law of the case will be determined.

According to the issues raised by the pleadings the burden
was evidently upon the defendant, but the plaintiff, so far as the
order of the trial progressed, assumed the affirmative by intro-
ducing its evidence, showing the sale by plaintiff of a threshing
machine to defendant, for which the note in controversy, intro-
duced in evidence, and which was the last note falling due, all
others having been paid, and which showed a balance of $593.39,
including $50 attorney fees, due on the 1st day of January, 1911.

The defendant, to maintain the defense of novation, testified
that he bought the machine from the plaintiff about the 1st of
July, 1905, through its agent at St. Louis, Mo., Moses P. John-
son, made his notes payable to plaintiff, and delivered them to
said Johnson, as agent of plaintiff. He also received the machine
from Johnson. That plaintiff kept a large amount of machinery
in St. Louis, and maintained an office there, under the manage-
ment of Moses P. Johnson, and that he paid his notes there as
they became due. That in the latter part of July, 1907, a man
by the name of G. L. Walcott proposed to buy the machine from
him and he said to him, "You can buy me out if you make it
satisfactory to Gaar, Scott & Co." The same day they went to
the office of plaintiff, in St. Louis. The regular agent, M. P.
Johnson, was not there. They told their business to a
son and son-in-law of M. P. Johnson, who were in the office.
Defendant said to "Young" Johnson and Robinson:

"We came down here to trade for the machine;" and "Young" Johnson, son of Moses P. Johnson, asked Walcott a few questions about what he had. "We talked the matter over. I told Walcott I would pay the interest, provided we made the trade, and we traded. Walcott paid me $100, and I paid all the interest then due to 'Young' Johnson, except about $16, and I went home."

He also testified that he had frequetly done business with Moses P. Johnson before, and that "Young" Johnson, this same son, attended to it.

"I had been doing business there about two years, had been in this office many times. M, P. Johnson was usually present. Had been there when M. P. Johnson was not there, and 'Young' Johnson would transact the business. Have had transactions with Gaar, Scott & Co., carried on by 'Young' Johnson in the absence of his father. These transactions were carried to their completion by Gaar, Scott & Co.

"Have had one letter from M. P. Johnson concerning business had with 'Young' Johnson. That was the letter of September 14, 1907, and is as follows:

"Johnson-Robinson Machinery Company.
"Successors to Moses P. Johnson Machinery. Company.
"St. Louis, Mo., Sept. 14, 1907.

"Mr. W. D. Rogers, Olustee, O. T., Greer Co.—Dear Sir: When you were in our office on July 23rd last you paid $60 on your note due September 1st, and you were to pay $16.03 additional interest. This has not been received by us. In other words, you were to have paid the interest in full up to that time, which amounted to $76.03. Please send us your check for $16.03 promptly, so that I can forward same to the factory.

"Yours very truly,
"Johnson-Robinson Machinery Company,
"By Moses P. Johnson."

Evidently this letter has reference to the Walcott-Rogers transaction. The defendant testified further as follows:

Q. "When you were in St. Louis and had the transaction you have testified to, what was the agreement concerning the payment of interest on the note sued on?" A. "They just

agreed to take Walcott for the notes. I agreed to pay the interest. I paid part of it, and sent the other when I got home. That money was sent in response to that letter. They just agreed to take Walcott for the note. I agreed to pay the interest. I paid part in St. Louis and balance when I got home."

It will be noticed that they were in St. Louis on July 23, 1907, before the note was due, which was September 1st, and the above letter asking for the balance of the interest is dated September 14th, after the note was due.

Q. "What was said, if anything, in that transaction in St. Louis concerning your getting your old notes? A. "They couldn't get them. They would just take Walcott on the notes."

Rogers received a receipt for the interest paid to "Young" Johnson in St. Louis at the time of the transaction as follows:

"Received of W. D. Rogers sixty dollars on account of interest on note to Gaar, Scott & Co., dated June 5, 1909, due September 1, 1907; balance $16.03.

"Interest to date $76.03.

"Moses P. Johnson,
"By M. Wilbur Johnson."

It will be noticed that nothing is said in this receipt about the release of defendant.

Defendant further testified:

"I think Walcott gave Robinson some kind of writing to that effect. They said they would take Walcott and the machine for the money." Q. "Didn't 'Young' Johnson and Robinson tell you they didn't have authority to close up this matter?" A. "No, sir. If they had, we would not have made the trade."

All the foregoing transactions were had with "Young" Johnson and Robinson, in the absense of Moses P. Johnson. On cross-examination the defendant testified that he paid one note to "Young" Johnson. The note in question was not in

the office of Moses P. Johnson at the time Walcott and the defendant were there.

Defendant further says:

" 'Young' Johnson also stated that they couldn't release the notes, because they were not there, and they would take the machine and Walcott for the money."

All this conversation was had with "Young" Johnson and H. K. Robinson, and in the absence of Moses P. Johnson. Defendant testified that he never demanded the notes from the plaintiff, but says, "Walcott was to get them when he paid them off."

Walcott testified that he bought the threshing outfit from Rogers in July, 1907, paid him $100, and assumed two notes given by Rogers to Garr, Scott & Co. He also stated:

"I was in St. Louis at time of transaction, but Moses P. Johnson, the main agent, was not there. Mr. Robinson, son-in-law of Moses P. Johnson, was there, and he said the trade between me and Rogers was satisfactory, if I paid $17 back interest, if Mr. Rogers did not. I reckon, to the best of my knowledge, Mr. Robinson was in charge of Gaar, Scott & Co.'s office and acting for it. I don't know what was said about the notes to be surrendered to him. I was just to pay on the Rogers note. 'Young' Johnson came in, and they agreed that I was to pay into the office of Gaar, Scott & Co. at St. Louis on the Rogers note. I also paid Moses P. Johnson part of this note."

S. S. Stratton, secretary for Gaar, Scott & Co., stated that he had been in its employ for 13 years, and that M. P. Johnson was the agent of the plaintiff at St. Louis, and that they had no other agent there.

M. Wilbur (Young) Johnson testified:

"I am the son of Moses P. Johnson. In 1907 I was secretary and treasurer of Johnson-Robinson Machinery Company, a corporation of St. Louis. M. P. Johnson had no connection

with Johnson-Robinson Machinery Company in 1907. He was sales agent for Gaar, Scott & Co. Johnson-Robinson Machinery Company had no authority to act for Gaar, Scott & Co. Henry K. Robinson was president of the Johnson-Robinson Machinery Company in 1907. He is son-in-law of Moses P. Johnson. I remember when Rogers and Walcott were in the office of Johnson-Robinson Machinery Company in 1907. They came in together. Rogers inquired for Moses P. Johnson. I told them Father was out of the city. They explained to Mr. Robinson and myself that they had an opportunity to dispose of the threshing outfit which Rogers had bought from Gaar, Scott & Co., on which that company still held a mortgage. Mr. Robinson and I both told them that we could not do anything for them, and advised them to see my father. I figured up for Mr. Rogers the amount of interest that he owed as an accommodation to him. I told him that the machinery held under mortgage could not be sold without the consent of the mortgagee, and before going any further with Walcott he had better take the matter up with Gaar, Scott & Co. And I told him that in any event Gaar, Scott & Co. would look to him for full payment of the notes. I did not tell them the trade would be satisfactory if Rogers would pay the interest. Henry K. Robinson did not make such a statement to them. I was present in the office all the time. I told Rogers if he wished to make a transfer to Walcott, it would be necessary for him to pay all his outstanding notes to Gaar, Scott & Co. in full. I did not represent to Rogers and Walcott that I represented Gaar, Scott & Co., and I never sanctioned any agreement or trade made between them."

Henry K. Robinson testified that he was in the office of the Johnson-Robinson Machinery Company when Rogers and Walcott came in. That he was present during the whole of the conversation. He corroberated the testimony of "Young" Johnson in every material particular.

The foregoing is a substantial statement of all the material testimony introduced in support of the defense of novation. A number of letters were introduced on behalf of the plaintiff, all of which have been carefully considered, but will not be discussed in the further determination of this case.

To obtain reversal, the plaintiff submits the following assignments of error:

(1) "Said court erred in overruling the demurrer to paragraph No. 2 of the original answer filed herein."

(2) "Said court erred in admitting evidence on the part of the defendant in error."

(3) "Said court erred in refusing and ruling out competent and legal evidence on the part of the plaintiff in error."

(4) "Said court erred in overruling demurrer to the testimony of defendant in error."

(5) "Said court erred in giving the following instructions to the jury, to wit:"

(6) "Said court erred in refusing to give the following instructions to the jury asked for by plaintiff in error, to wit: (Omitting special instructions Nos. 6 and 7, objections to which are not presented in this brief.)"

(7) "Said court erred in overruling the motion of plaintiff for a new trial, one of the principal grounds for which was 'that the verdict is not sustained by sufficient evidence and is contrary to law.' "

The first assignment will not be considered, for the reason that it is directed to paragraph 2 of the original answer, which is superseded by the amended answer.

"The effect of the original pleading is destroyed by the filing of an amended pleading, which is complete in itself and does not refer to or adopt the original as a part of it." *Berry v. Barton,* 12 Okla. 221, 71 Pac. 1074, 66 L. R. A .513; Vol. 1, Enc. Pl. & Pr. 624; *Moore v. Wade,* 8 Kan. 380.

Assignments 2 and 3 will not be considered, for the reason that they do not comply with rule 25 (38 Okla. 137 Pac. xi) of this court, which provides:

"Where the party complains on account of the admission or rejection of testimony, he shall set out in his brief the full substance of the testimony, to the admission or rejection of which he objects, stating specifically his objection thereto."

Assignments Nos. 4 and 7 are directed to substantially the same proposition, viz., "That the verdict is not sustained by sufficient evidence and is contrary to law"—and will be considered together.

Before taking up a discussion of the evidence necessarily raised by these assignments, it will be well to consider to some extent the law of novation, and, thereby, the evidentiary facts necessary to sustain it.

"Novation, is the substitution, by mutual agreement, of one debtor or of one creditor for another, whereby the old debt is extinguished, or the substitution of a new debt or obligation for an existing one, which is thereby extinguished. It is a mode of extinguishing one obligation by another—the substitution, not of a new paper or note, but of a new obligation in lieu of an old one—the effect of which is to pay, dissolve, or otherwise discharge the old debt." 29 Cyc. 1130.

"To establish the fact of novation by the substitution of a new creditor, it must be proved that a new contract was made by which the original debtor was released." *Woodruff v. Hensel,* 5 Colo. App. 103, 37 Pac. 948; *Sutter v. Moore Inv. Co.,* 30 Wash. 333, 70 Pac. 746.

In passing upon this question this court says:

"In order to complete the contract of novation, it is necessary that the party seeking to show that he is entitled to the benefit of such a contract and to be released from liability, shall be able to show, not only that the new party undertaking to assume the liability shall have completed such a contract with him, but that such new party shall also have so sufficiently and fully contracted with the creditor, and that the creditor shall have plainly signified his assent to the discharge of the debtor, but also his assent to the new liability and that such new liability shall be so understood and perfected as that the creditor shall be able to hold the new debtor legally liable thereupon." *Lowe v. Blum,* 4 Okla. 260, 43 Pac. 1063.

"In order to establish the facts of novation by the substitution of a new debtor it must be shown by a clear preponderance of the evidence that the three parties met and agreed to such

substitution; that the new debtor assumed and promised to pay the debt of the original debtor, and that the creditor accepted the new debtor and released and discharged the original one." *Richardson Drug Co.* v. *Dunagan,* 8 Colo. App. 308, 46 Pac. 227; *Foster* v. *Paine,* 63 Iowa, 85, 18 N. W. 699; *Brown* v. *Croy,* 74 Mo. App. 462.

The entire weight of authority is to the effect that novation is never presumed, but the contract must be clearly proven.

Adopting the foregoing rules as a guide, we come to the question as to the sufficiency of the authority of the alleged agent to enter into the contract. If the question depended solely upon the authority of Moses P. Johnson, who will be referred to herein as "principal agent" of the plaintiff, the question would be an easy and simple one. The defendant's answer charges that:

"Said plaintiff, Gaar, Scott & Co., *acting by its duly authorized agent,* Moses P. Johnson, did agree to release this defendant from further liability for the payment of said note."

The reply being a general denial, unverified, under section 4759, Okla. Statutes, 1910, which is as follows:

"In all actions, allegations * * * of any appointment of authority, * * * shall be taken as true unless the denial of the same be verified by the affidavit of the party, his agent or attorney,"

—is not only an admission of the agency of Johnson, but an admission of his agency with full power and authority to enter into the contract as alleged in the answer.

Upon this point the Supreme Court of North Dakota lays down the doctrine as follows:

"The contention of the appellants that the purpose and extent of the agency must be pleaded * * * cannot be sustained. The allegation that K. was the 'duly and authorzied agent of the K. Land Company' should be construed as stating that he was a duly and legally authorized agent of said company

for all purposes in connection with the transaction set forth in the complaint. By admitting such allegation to be true, it must be admitted to be an admission of such agency with full authority in the premises. * * * The general allegation of an authorized agency will be presumed to be an agency with full powers legally conferred." (*Mitchell v. Knudtson Land Co.*, 19 N. D. 736, 124 N. W. 946.)

Upon consideration of the same proposition the United States Court of Appeals, Eighth Circuit, after quoting the above section of the Oklahoma Statutes, says:

"In the petition B. is described as the duly authorized agent and attorney of defendant and as duly authorized by H. to represent him in said transaction. These allegations are not denied under oath. The general allegation of an authorized agency will be presumed to be an agency with full powers legally conferred. The failure to deny under oath is equivalent to an admission in the answer. * * * No further proof of the agent's authority was required." (*Baird Inv. Co. v. Harris*, 209 Fed. 297, 136 C. C. A. 217.)

From the foregoing it will appear that Johnson, the principal agent, had full authority and power to enter into the contract of novation as alleged in defendant's answer; and this brings us to the question as to whether or not such agency and authority carries with it the implied power to appoint a clerk or subagent with authority to bind the plaintiff in said contract. We are clearly of the opinion that it does not. The testimony is undisputed the principal agent was not present and knew nothing of the alleged contract at the time it was alleged to have been made. In fact there is no evidence tending to show that he had any knowledge of an agreement from his obligation to pay the note.

On the proposition of the authority of the principal agent to appoint a subagent or clerk with power to bind the principal, without the knowledge and consent of the principal, there does not seem to be even a divided opinion or conflict of authorities. In speaking of this question, Chief Justice Burford says:

"An agent or factor has no implied authority to appoint subagents, or to delegate his powers; and persons employed by him * * * do not become the agent of the principal, without the principal's consent." (*People's Bank v. Frick Co.,* 13 Okla. 179, 73 Pac. 949.)

The same doctrine is laid down, and supported by a long list of authorities, in Mechem on Agency in this language:

"It is of the general rule of the law, that in the absence of an·authority, either express or implied, to employ a subagent, the trust committed to the agent is presumed to be exclusively personal, and cannot be delegated by him to another so as to effect the rights of the principal. Putting it into more specific form, an agent generally has no implied authority either to put a substitute in his place, or to employ assistants on his principal's account." Id. sec. 306.

The same authority gives the reason for this rule as follows:

"The selection of an agent in any particular case is made, as a rule, because he is supposed by his principal to have some fitness for the performance of the duties to be undertaken. In certain cases his selection is owing to the fact that he is considered to be especially and particularly fit. The undertaking demands judgment and discretion,· which he is supposed to possess; or it requires the skill and learning of an expert, which he assumes to be, * * * and it is obvious that, unless the principal has expressly or impliedly consented to the employment of a substitute, the agent owes to the principal the duty of personal discharge of the trust." Id. sec. 305.

"The general rule is that the agent, in whom is reposed trust or confidence, or who is required to exercise discretion or judgment may not intrust the performance of his duties to another without the consent of his principal." 31 Cyc. 1425-1628 and 1380.

Counsel for defendant in his brief calls attention to the following language used by the Court of Appeals of Missouri, which clearly comes within the exceptions hereinafter referred to:

"An agent has no power to delegate his agency to another, or to sublet it. But he may employ clerks and subagents, whose

acts, if done in his name, and recognized by him, either specially, or according to his usual method of dealing with them, will be regarded as his acts, and, as such, binding on the principal." (*Lingenfeller v. Phoenix Ins. Co.*, 19 Mo. App. 252.)

It will be found upon investigation, that there are exceptions to the general rule as applied to the authority of the principal agent to delegate his power to a subagent or clerk, but these exceptions are most generally applied to insurance companies, for the reason that the agents, as stated by the authorities upon the subject, have general supervision, not only of the business coming directly under their personal charge, but such a line of business that cannot at all times receive the personal attention of the principal agent, and in the performance of the duties of an insurance agency, the work is generally mechanical, or ministerial, and does not require the exercise of special skill, discretion, or judgment. In speaking of these exceptions to the general rule recognized by the authorities, Mechem lays down the doctrine as follows:

"Where, in the execution of the authority, an act is to be performed which is of merely mechanical, ministerial, or executive nature, involving no element of judgment, discretion, or personal skill, the reason for the general rule does not apply, and the power to intrust the performance of it to the subagent or clerk may be implied." Mechem Agency, sec. 315.

Such exceptions apply to persons empowered to execute promissory notes, or to bind the principal to a subscription agreement, or to execute a deed. The principal agent, having first determined upon the propriety of the act, may direct another to perform the mechanical act of writing the note or signing the acceptance, or subscription agreement. Only in such acts involving the mechanical or ministerial act of the subagent or clerk, and where no judgment, discretion, or special experience is necessary to be exercised, is the exception recognized.

In the case at bar the question of releasing the original

debtor, and accepting a new one in place of him, involved much more than a mere ministerial or mechanical act. It required an investigation of values, the reputations and financial standing of Walcott as a new debtor, and called for special judgment and experience, and, therefore, does not come within the exceptions laid down by the authorities, nor within the rule contended for by the defendant. It would be extending the doctrine entirely too far, to say that an agent authorized to make sales of machinery, or even to make collections and take security for machinery sold, could delegate power to a clerk or subagent to release one debtor and accept another in his stead, without the knowledge or consent of the principal.

There is no legal evidence whatever to sustain the theory that plaintiff ratified the contract of novation. To establish a ratification of an unauthorized act of an agent, the principal must have full knowledge of all the material facts at the time of the ratification. The rule as laid down by Mechem is as follows:

"Any ratification of an unauthorized act or contract, in order to be made effectual and obligatory upon the alleged principal, must be shown to have been made by him with a full and complete knowledge of all the material facts connected with the transaction to which it relates; and especially must it appear that the existence of the contract and its nature and consideration were known to him." Mechem on Agency, 395; *Minn. T. M. Co. v. Humphrey,* 27 Okla. 694, 117 P. 203.

As said by Justice Bierer:

"There can never be a ratification of an unauthorized act of an agent by a principal unless he has full knowledge of all the facts." (*Bank v. Williamson,* 6 Okla. 348, 50 Pac. 93.)

Evidently the latter part of instruction. No. 3 is erroneous, for the reason that in the face of the admission in the pleadings of the authority of Moses P. Johnson to enter into the contract of novation, the court tells the jury that, "if they find that he had authority to make the contract, their verdict must be for the

defendant," thereby leaving out of consideration, entirely, the question of the power of Johnson to delegate his authority, as such agent, to the clerks or subagents, and also the question as to whether the facts proved amount to an acceptance of Walcott, and a release of the defendant, on the note.

We are not unmindful of the well-established rule of this court, that where there is any evidence reasonably tending to support the verdict, or where the evidence is conflicting, it will not be disturbed; but the other rule, that where there is no evidence to support the verdict, it should be set aside, is just as imperative upon the court, nor do the views herein expressed conflict, but are in full accord, with *Cinn. T. M. Co. v. Humphrey,* 27 Okla. 694, 117 Pac. 203, wherein this court, in an able opinion by Justice Kane, says:

"The apparent authority of an agent is to be gathered from all the facts and circumstances in evidence, and is a question of fact for the jury;" and,

The "finding of the jury on the question of ratification or confirmation by a principal of acts of an agent, if there is any evidence reasonably tending to support it, will not be disturbed by the Supreme Court."

That case is clearly distinguished from this, for the reason that in the case cited it was found that there was some evidence to sustain the verdict, while in this case there is an entire lack of evidence to support it.

We have read the record carefully for the purpose of finding some legal evidence tending to show the authority of "Young" Johnson or Robinson to enter into the contract of novation as alleged, but have been unable to find any. In like manner we have searched for competent evidence tending to show that even the claimed agents of plaintiff consented to, or entered into any kind of an agreement to, release the defendant from the payment of the notes, and have been unable to do so. For these reasons

we are forced to the conclusion that there is no legal evidence to sustain the verdict, and therefore recommend that the case be reversed and remanded for new trial.

By the Court: It is so ordered.