# L. B. GRANT LUMBER CO. v. ROBERTSON.

No. 10315—Opinion Filed Dec. 20, 1921.

Rehearing Denied Jan. 24, 1922.

(Syllabus.)

1. **Principal and Agent — Authority of Agent to Delegate Powers—Acts of Sub-agent.**

It is a general rule that an agent is not authorized to delegate his powers, where personal trust or confidence is reposed in him, or where his duties require experience and the exercise of judgment or discretion, unless there is a special power of substitution, either express or necessarily implied. He may, however, as a general thing, employ others to assist him in the purely ministerial and unimportant details of his duty, and their acts, when done in his name and recognized by him, are regarded as his acts, and as such binding on his principal.

## 2. Same—Sales — Inspection of Lumber by Subagent.

Where a lumber dealer employed an agent to inspect and accept lumber purchased by such dealer, and such agent failed to make inspection of such lumber, but the same was inspected by his clerk or subagent, without the knowledge or consent of the principal, and the lumber was rejected by the principal because of its unmerchantable condition, held, duty of inspecting and accepting such lumber was not purely a ministerial or unimportant detail of the duties of the agent, but such duty required experience and involved the exercise of judgment, and could not be delegated by the agent so as to bind the principal by the acts of such clerk or subagent.

Error from District Court, Oklahoma County; Edward Dewes Oldfield, Judge.

Action by J. F. Robertson against L. B. Grant Lumber Company, a corporation, for purchase price of lumber. Judgment for plaintiff, and defendant brings error. Reversed and remanded.

Homer N. Boardman. for plaintiff in error.

Everest, Vaught & Brewer, for defendant in error.

NICHOLSON, J. This action was instituted in the district court of Oklahoma county by the defendant in error against the plaintiff in error to recover the sum of $666.18 on an account for certain lumber sold and delivered. We will refer to the parties as they appeared in the trial court.

The plaintiff attached to his petition a statement of .his account, and also statements rendered to him by the defendant claiming credit for the sum of $538 for certain shortage, demurrage, and culls which the defendant claimed should be deducted from the sum sued for, and alleged that the claims and amount attempted to be deducted from the amount of his account as shown by said statements were false, fraudulent, and fictitious, were not founded on fact, and that said defendant was not entitled to any allowance therefor; and further alleged that at the time of sending such statements said defendant sent to plaintiff its check for the sum of $128.18, which defendant claimed was in full payment of its indebtedness to the plaintiff, but that plaintiff did not accept said check but returned the same to the defendant for the reason that said defendant was indebted to him in the sum of $666.18, with interest thereon at the rate of 6 per cent. per annum from the 24th day of May, 1918.

The defendant answered, denying that the claims and amounts deducted by it from the amount of the account rendered it by plaintiff were false, fraudulent, or fictitious, and averred that said claims, sums, and amounts so deducted were well founded in fact, and constituted proper and legal offsets against · plaintiff's claim on account of certain shortage, overcharge, and worthless and unmerchantable lumber as set forth in the exhibits attached to plaintiff's petition; that the defendant, upon the arrival of said lumber at its destination, notified the plaintiff of said worthless and unmerchantable condition of said lumber, and that the plaintiff came to Drumright, the point to which said lumber was delivered, and made a personal inspection of all of said cars of lumber while said lumber was still on the track in the possession of the railroad company, and upon such inspection advised said defendant to cull the same and charge him, the plaintiff, back with the sum and amount of the worthless and unmerchantable lumber so culled, and that accordingly defendant did separate the worthless lumber from the good merchantable lumber, and upon so doing accepted and received all the good and merchantable lumber, and rejected and refused to accept or receive all that which was worthless and unmerchantable; and averred that the statements attached to plaintiff's petition were correct statements of the worthless and unmerchantable lumber culled and rejected by the defendant at the request and with the knowledge of the plaintiff; and, as a second defense. pleaded that it had settled the entire transaction in full by the payment of the sum of $128.18, which sum was received by the plaintiff in full and complete settlement and satisfaction of the transaction mentioned in plaintiff's petition.

A reply, consisting of a general denial, was filed. Upon a trial a verdict was returned in favor of the plaintiff for the amount sued for, upon which judgment was rendered, and to reverse which this proceeding in error is brought.

Various assignments of error are made, but as each involves the question of the competency of the evidence produced by plaintiff to the effect that the lumber in question was inspected and accepted at the place of origin by the agent of the defendant, we will consider all the assignments together.

The evidence on behalf of the defendant was to the effect that, upon the arrival of the lumber in question at Drumright and Shamrock, the same was refused because it was defective and not fit for the purposes for which it was purchased; that the plain-

tiff was immediately notified of the condition of said lumber, and went to Shamrock and Drumright, and inspected the lumber himself, admitted that it was defective and instructed the defendant to unload the same, cull it and pay him for such lumber as could be used; that this was done, and that the worthless lumber, shortage, and demurrage amounted to the sum of $538; that bills were rendered for this amount and the difference of $128.18 was remitted to plaintiff by check. This evidence was controverted by the plaintiff. He denied that the lumber was faulty, or that he instructed the defendant to cull it, and testified that he did not accept the check as a settlement of the account, and that the purpose of his visit to Drumright was to collect the amount owing him by the defendant. He further introduced evidence, over the objection of the defendant, to the effect that all of the lumber in question was inspected and accepted at the point of origin by one R. E. Reese; that Reese was an employe of Al Rucker, who was the agent of the defendant in purchasing lumber in that vicinity. Mr. Grant, president and manager of the defendant, testified that he did not know Mr. Reese; that he never at any time authorized him to inspect lumber, and that Reese never represented the defendant in any capacity.

If this case hinged upon that which transpired at Drumright and Shamrock upon the occasion of the plaintiff's visit there, we would not disturb the verdict, as the evidence was in direct conflict, and was purely a question for the jury's decision, but that is not, in our opinion, the question decisive, of the case. The court permitted the plaintiff to introduce evidence showing that the lumber had been inspected and accepted for the defendant by Mr. Reese, who, according to the uncontroverted evidence of Mr. Grant, did not represent the defendant in any capacity. The only agency proven or attempted to be proven was that of Rucker, with power and authority to inspect and accept lumber on behalf of the defendant, and there is evidence to the effect that Reese was an employe of Rucker. Therefore, the question for determination is, Could Rucker delegate his powers to Reese so as to bind the defendant by the acts of Reese? In Gaar, Scott & Co. v. Rogers, 46 Okla. 67, 148 Pac. 161, the rule is stated thus:

"The general rule of law is that an agent has no implied authority to delegate his powers to a clerk or subagent; and persons employed by him as clerk or subagent do not become the agent of the principal, without the principal's consent; and only upon extreme and unusual exigencies can an agent delegate his authority to a clerk or subagent to transact business for his principal which requires special judgment, discretion, and experience, without the consent of the principal."

And in 21 R. C. L. 860, the general rule is announced that where personal trust or confidence is reposed in the agent, and where the act to be done involves his judgment or discretion, the authority is purely personal and cannot be delegated to another, unless there is a special power of substitution, either express or necessarily implied, and it is there said:

"He may, however, as a general thing, employ others to assist him in the purely ministerial and unimportant details of his duty."

So that, applying this rule to the facts in this case, we are called upon to determine whether or not the duty of inspecting and accepting this lumber required the exercise of judgment or discretion, and whether experience was necessary in performing these duties, or whether they were purely ministerial and unimportant details of the duty of the agent.

So far as the record shows, the power and authority of Rucker was to inspect and accept lumber for the defendant, and it may fairly be assumed that in conferring this authority upon him the defendant did so because of the personal trust and confidence reposed in him, and because of the defendant's belief in his ability to properly inspect the lumber purchased. There is no evidence indicating that these powers were purely ministerial and unimportant, but, on the contrary, it seems clear to us that the duty of inspecting and accepting lumber, which was purchased for a specific purpose and was necessarily required to answer certain specifications, required experience and the exercise of judgment, and that the authority was not such as could be by Rucker delegated to Reece so as to bind the defendant by the acts of Reece. No special power of substitution is shown, and no facts are disclosed upon which such power might be implied. There is no evidence as to the customs and usages of the lumber trade in this regard, or that the defendant knew or had reason to believe that the authority conferred upon Rucker might be delegated by him.

We conclude that the trial court committed prejudicial error in permitting the plaintiff to prove the inspection of the lumber by Reese in the absence of evidence of

the agency of Reese, and when this agency was disproved by the uncontroverted evidence of Mr. Grant, that the court should have sustained the motion of the defendant to withdraw from the consideration of the jury any evidence pertaining to the actions of Reese, and that while instruction No. 3 given by the court fairly states the law as an abstract proposition, it was improper to submit the question of agency to the jury under the facts disclosed.

For the reasons stated, the judgment of the trial court is reversed, and the cause remanded, with directions to grant a new trial.

HARRISON, C. J., and PITCHFORD, McNEILL, and ELTING, JJ., concur.