## CARGILE v. UNION STATE BANK *et al.*

No. 3378.    Opinion Filed March 17, 1914.

(139 Pac. 701.)

1. **PRINCIPAL AND AGENT — Authority of Agent — Limitations.** Limitations which are known to a person dealing with an agent are as binding upon such person as they are upon the agent, and he can acquire no rights against the principal by dealing with such agent contrary thereto.

2. **SAME—Ratification of Agent's Contract.** Ratification of an unauthorized contract can only be made when the principal is fully cognizant of all the facts of such unauthorized transaction, and receives the proceeds or a part thereof.

3. **APPEAL AND ERROR—Parties—Right of Appeal.** It is only a party aggrieved by a judgment who has the right to appeal therefrom.

4. **SAME—Record—Review.** Record examined and held to disclose no reversible error.

(Syllabus by the Court.)

*Error from Superior Court, Muskogee County;*
*Farrar L. McCain, Judge.*

Action by the Union State Bank against J. T. Cargile, J. W. McRea, and the Mid-Continent Life Insurance Company. From the judgment, J. T. Cargile brings error. Affirmed.

*Geo. A. Murphey* and *W. W. Noffsinger,* for plaintiff in error.

*Blakeney & Maxey,* for defendant in error, Mid-Continent Life Insurance Company.

*Bailey, Wyand & Moon* and *Alvin F. Molony,* for defendant in error, Union State Bank.

KANE, J. This was an action upon a promissory note, commenced by the defendant in error, Union State Bank, against the plaintiff in error, J. T. Cargile, as principal, and J. W. McRea and Mid-Continent Life Insurance Company, as endorsers. Service of summons was had upon all the defendants. Cargile

filed an answer and cross-petition wherein he admitted the execution of the note sued upon, but denied liability for its payment as against the insurance company and alleged that he is entitled to have canceled and returned to him another promissory note for the sum of $3,000, executed at the same time and as a part of the same transaction, on account of the breach by the insurance company of a certain contract relating to said notes which was made and entered into by and between said Cargile and said McRea, who, it is alleged, was the agent of the insurance company and was acting for it in executing said notes and contract. The answer of the Mid-Continent Life Insurance Company was a general denial and an allegation to the effect that it did not endorse the note in plaintiff's petition, and that said note was not endorsed by it, or anyone having authority to bind it in the premises.. McRea did not appear. The case was tried to a jury, and after all parties had introduced their evidence and rested, the court sustained a demurrer to the evidence interposed by the Union State Bank in so far as the same attempted to constitute a defense to the plaintiff's cause of action in favor of the defendant, Cargile, or entitle him to any affirmative relief against the Mid-Continent Life Insurance Company, and a demurrer to the evidence interposed by the insurance company in so far as the same attempted to constitute a cause of action in favor of the plaintiff against the insurance company, and entered a judgment in favor of the plaintiff against Cargile and McRea, to reverse which action Cargile commenced this proceeding in error, joining all the other parties as defendants in error. After stating his grounds for reversal under several subheads in his brief, counsel for plaintiff in error adds:

"The subdivisions may be summed up in the one proposition that the court erred in sustaining the demurrer to the evidence and the decision herein rendered on the evidence."

We think the action of the court in sustaining the various demurrers to the evidence was entirely correct. We may assume that the plaintiff purchased the note sued upon with full notice of all the facts and circumstances adduced at the trial upon which the plaintiff in error relied for a defense and affirmative relief

against the insurance company, and still the plaintiff would be entitled to recover against Cargile, the principal on the note. Both notes were given in payment for certain shares of the stock of the insurance company. Contemporaneous with the execution of the notes, Cargile became a party to two written contracts concerning them, one of which is designated "Selected Subscription." After stating in detail the number of shares of stock for which he subscribed, the price, terms of payment, etc., this contract contains the following provision:

"It is understood and agreed that no conditions of the agreement, other than those printed herein shall be binding upon the company, and that the first payment thereon shall be the liquidated damages to the company, should I fail to comply with this subscription as agreed.

"(Signed)    J. T. CARGILE, subscriber.
"(Signed)    J. W. McREA, Agent.            Banker, occupation."

The other contract, upon the breach of which Cargile relies for his defense, was entered into between "J. T. Cargile and J. W. McRea," and is signed, "J. W. McRea" and "J. T. Cargile." After referring to the stock subscription, terms of sale, etc., this latter contract continues:

"Now, therefore, in consideration of the above-named subscription, and the paying in cash to the said company of the first payment, the said J. T. Cargile agrees to permit and allow the said McRea to resell the above-mentioned stock on the following terms and conditions, to wit: At and for the price of $150.00 per share, less actual agent's commission of, not to exceed $20.00 per share, both parties hereto agreeing that the difference between the present price (net of $90.00 per share), and the selling price (net of $130.00 per share), to be equally divided by and between the parties hereto; and when so resold, the said J. T. Cargile to have returned to him his note fully canceled. The said McRea agreeing to sell, or cause to be resold, all the above-mentioned stock, on or before Feb. 1st, 1910. It being further agreed that any higher price than $150.00 per share being realized, a division shall be made of such advance, less actual cost of selling."

There is nothing upon the face of the latter contract to indicate that McRea intended, or had authority, to bind the insurance company by its terms. It purports to be an agreement be-

tween Cargile and McRea, and the evidence adduced at the trial is in harmony with this view. Moreover, the "selected subscription" contract which McRea signed as "agent" specifically limits his authority to bind the company by any conditions other than those printed therein. The provision of the subscription contract above set out constituted notice to Mr. Cargile of the limitations therein upon the authority of McRea to bind the company. In such circumstances, a breach of the contract between Cargile and McRea cannot be held to affect the rights of the insurance company in the premises. The rule is that:

"Limitations which are known to a person dealing with an agent are as binding upon such person as they are upon the agent, and he can acquire no rights against the principal by dealing with such agent contrary thereto."

*Flower City Plant Food Co. v. Roberts,* 80 N. Y. Sup. 1060; *Legnard v. Standard L. & A. Co.,* 81 N. Y. Supp. 516; *Bruner v. Kansas Moline Plow Co.,* 7 Ind. T. 506, 104 S. W. 816; *Hutson v. Prudential Ins. Co.,* 122 Ga. 847, 50 S. E. 1000.

It is asserted by counsel for plaintiff in error that certain conduct of the Mid-Continent Life Insurance Company constitutes a ratification of the McRea contract, but there is nothing in the record which tends to sustain this contention. Ratification of an unauthorized contract can only be made when the principal is fully cognizant of all the facts of such unauthorized transaction, and receives the proceeds or a part thereof. *Craft v. South Boston Ry. Co.,* 22 N. E. 920, 150 Mass. 207; *Wickersham Banking Co. v. Nicholas,* 2 Cal. App. 18, 82 Pac. 1124; *Handback v. Corrigan,* 7 Kan. App. 479; *Homan v. Brooklyn Life Ins. Co.,* 7 Mo. App. 22; *Carroll v. Tucker,* 21 N. Y. Supp. 952, 35 N. E. —; *Williams v. Moore* (Tex.) 58 S. W. 954. There is no evidence in this record tending to show that the Mid-Continent Life Insurance Company was cognizant of all the facts, but, on the contrary, it is conclusively proven that it knew nothing whatever of the individual contract between Cargile and McRae until long after the note sued upon, which was payable to McRea, and not to the Mid-Continent Life Insurance Company, had been negotiated by him.

Some point is also sought to be made that the insurance company failed to deliver the stock subscribed for by the plaintiff in error. The insurance company, however, in its answer offers to issue the stock to the plaintiff in error upon his paying the balance of the subscription price pursuant to the terms of his written contract, and asserts that it is ready and willing to comply with said contract on its part and deliver the stock upon Mr. Cargile's making the deferred payments. Under such circumstances, it is clear that Mr. Cargile has no ground for complaint and cannot maintain an action to recover the amount paid, nor to cancel the notes given pursuant to his contract. *Rayfield v. Van Meter* (Cal.) 52 Pac. 666; *Keefe v. Fairfield,* 184 Mass. 334, 68 N. E. 342.

We may add in passing that the pleadings and the evidence conclusively show that the Union State Bank was an innocent purchaser of the note sued upon. What we have already said covers all the questions presented in which the plaintiff in error may be said to have an interest. If the Union State Bank is satisfied with the action of the court in sustaining the demurrer of the insurance company to the evidence in so far as the evidence attempted to establish a cause of action on the part of the plaintiff against it, the plaintiff in error has no right to complain. It is only a party aggrieved by a judgment who has the right to appeal therefrom. 2 Cyc. 631.

Finding no reversible error in the record, the judgment of the court below must be affirmed.

All the Justices concur.