## FIRST NAT. BANK OF CANADIAN v. BREWER.

No. 8450—Opinion Filed June 11, 1918.

Rehearing Denied Sept. 5, 1918.

(174 Pac. 1077.)

1. **Principal and Agent—Unauthorized Act of Agent—Ratification.**

To establish a ratification of an unauthorized act of one assuming to act as agent of a third person, the third person must have full knowledge of all the material facts at the time of the ratification.

2. **Banks and Banking— Transfer of Accounts of Depositor—Burden of Proof—Ratification.**

In an action prosecuted by the administrator of the deceased against a bank for the recovery of funds deposited with said bank by the deceased, where the bank admits the receiving of the funds from the deceased, and claims that under authority from the depositor the cashier of said bank transferred said funds from the account of the said deceased to the account of the cashier himself, the bookkeeper, and another depositor of the bank, for the purpose of making up a shortage in the accounts of such depositors, the burden is upon the bank to show that the cashier had authority from the depositor to make such disposition of said funds, and further, when it is claimed that the depositor, the deceased, ratified the acts of the cashier in transferring said funds, the burden is upon the bank to establish such ratification.

3. **Evidence—Impeachment of Witness—Disregard of Testimony.**

Where the credibility of a witness is impeached, the jury in its province may disregard the testimony of such witness, notwithstanding such testimony is undisputed.

4. **Banks and Banking—Recovery of Deposit—Sufficiency of Evidence.**

The evidence in this case examined, and held sufficient to sustain the verdict of the jury.

(Syllabus by Pryor, C.)

Error from District Court, Pittsburg County; Chas. G. Watts, Judge.

Action by John C. Wilson against the First National Bank of Canadian. After action brought, on death of plaintiff, the cause was revived in name of his administrator, R. P. Brewer. Judgment for plaintiff, and defendant brings error. Affirmed.

Wm. H. Fuller, George M. Porter, and Guy L. Andrews, for plaintiff in error.

Gordon & McInnis and Wallace Wilkinson, for defendant in error.

Opinion by PRYOR, C. This action was commenced in the district court of Pittsburg county on the 31st day of May, 1913, by John C. Wilson against the First National Bank of Canadian for the recovery of money deposited with the bank. The parties will· be referred to as they appeared in the trial court. Subsequent to the commencement of the action, the plaintiff, John C. Wilson, died, and the cause was revived in the name of his administrator, R. P. Brewer.

In his petition the plaintiff alleges that the defendant bank closed and ceased to do business on the 7th day of April, 1913, and at that time there was a balance due the plaintiff on deposits made with said bank by the plaintiff in the sum of $9,915.89, and asked judgment for the same. The defendant in its answer alleges that the plaintiff deposited various sums with the bank from the 7th day of February, 1913, until the 5th day of April, 1913, and that on the 5th day of April, 1913, there was due the estate of John C. Wilson the sum of $1,348.61, and no more; that the defendant attaches an itemized statement of account, showing all the deposits and checks drawn upon said account, and denies that the defendant bank is indebted to the plaintiff in the sum of $9,915.89. One of the debits against the account of the plaintiff was in the sum of $8,150. The controversy over this amount became the real basis of the lawsuit in the trial court and the amount involved here. The cause was tried to a jury, and there was verdict and judgment in favor of the plaintiff and against the defendant in the sum of $7,170.90. From this judgment the defendant appealed.

The principal contention of the defendants is that the verdict and judgment is not sustained by the law and evidence. The bank admits receiving the funds sued for. Having made this admission, it is incumbent upon the bank to show that these funds have been either returned to Wilson, the depositor, or paid out by the bank under due authorization of Wilson. The disposition of the $8,150 in controversy was made as follows: On the 25th day of February, 1913, Fain C. Gillock, the cashier of the defendant bank, had an overdraft of $4,704.26; the bookkeeper, John W. Roe, had an overdraft of $527.68; and the Canadian Realty Company had an overdraft of $533.61. The Canadian Realty Company was a concern in which the cashier Gillock, was one of the officers and interested. On said date the bookkeeper, John Roe, under

instructions of the cashier, Gillock, made a debit slip against the account of John W. Wilson, plaintiff, in the sum of $8,150, crediting Gillock's account with $5,000, the bookkeeper Roe's account with $600, and the realty company's with $550; $2,000 was applied on two notes that the defendant claimed plaintiff had indorsed as surety. At the time that this debit was made, and the funds of Wilson were transferred to the accounts of the above-named parties, the bank had no check or order from Wilson authorizing it to make these transfers, but the cashier, Gillock, told the bookkeeper, Roe, that he would furnish him with a check later. The facts further show that· at the time the bank's doors were closed, and it had ceased to do business, the cashier, Gillock, was in default with the bank approximately the sum of $18,000; that he had pleaded guilty to the charge of misappropriation of the bank's funds, and was at the time of the trial of this cause in the penitentiary at Leavenworth serving sentence. As to these facts there is no dispute.

It is the contention, however, of the defendant, that plaintiff, John Wilson, had authorized the cashier, Gillock, to invest said funds, and that the cashier informed Wilson of the disposition of the amounts in dispute, and that Wilson, the plaintiff, ratified the acts of the cashier and gave his check to Gillock to cover the amount. The evidence, while showing that there was some conversation between Gillock and Wilson about entering into the loan business, whereby Gillock was to make loans of funds for Wilson and himself, does not show that there was any understanding between Gillock and Wilson relative to this particular fund. The conversations that the cashier, Gillock, had with Wilson, were relative to funds which Wilson and Gillock contemplated borrowing and loaning—something in the neighborhood of $20,000. The evidence on this point is entirely unsatisfactory, even giving the witness· Gillock's testimony full faith and credit, and the jury was amply justified in refusing to find that the plaintiff, Wilson, had authorized Gillock to use the $8,150 in controversy.

As to the ratification of the acts of Gillock, the evidence of the defendant is also unsatisfactory, and totally lacking in the qualities necessary to carry conviction to the minds of the jury. The cashier, Gillock, testified that, on the night of the same day the funds were transferred from Wilson's account to other accounts, Wilson came to his office and gave him a check. Gillock claims that he told Wilson that he had an opportunity to use or invest the money Wilson had on deposit. He does not pretend that he informed

Wilson that he had already used the funds to make good the shortages of himself, the bookkeeper, and the realty company. He stated, further, that afterwards, at a time when a dispute had arisen over this money, and feeling was so bitter between Wilson and Gillock that Gillock would not go about Wilson unless he was guarded by a peace officer, that Wilson returned this canceled check to him. The item of $8,150, or the canceled check, did not appear in the statement made to Wilson of his account for the period covering the time when this transfer was made of the funds. The testimony of Gillock in this particular, concerning the giving of this check and the ratification of his acts in the transfer of the funds, under the circumstances, was not worthy of the belief of the jury, and they had a right to disregard it. The statement that Wilson returned the canceled check to the cashier, at the time when there was such bitter controversy over this particular amount that Gillock was afraid to go in the presence of Wilson without being protected by an officer, is certainly not worthy of credit. By this act Wilson would be surrendering himself into the hands of his adversary, and there is no intimation in the record that Wilson was either a fool or a coward; on the contrary, the evidence shows that he was a shrewd, intelligent business man. The circumstances under which the check was given by Wilson, does not show that Wilson had knowledge of the disposition of this fund. It rather shows, on the contrary, that the check was procured from Wilson under circumstances which would amount to fraud, and the bank could not take advantage of this check.

The defendant relies principally on the testimony of Gillock, who had pleaded guilty to misappropriation of the bank's funds and was at the time of giving his testimony serving sentence therefor in the federal penitentiary to establish its defense. The weight to be given such testimony was for the jury to decide. There is another circumstance that casts a serious doubt upon the genuineness of the check. The bookkeeper, Roe, testified that he never saw the check, or had it in his possession, but stated that he made out the debit slip for the $8,150. The handwriting in the debit slip and in the body of the check are so similar that the jury would be justified in believing that Roe wrote the check himself; also the comparison of the signatures of the check and the admitted signatures of the plaintiff, Wilson, casts such serious doubt upon the genuineness of the signature of the check that the jury had reason to refuse to believe the signature was the genuine signature of Wilson.

Taking in consideration the characters of the witnesses, who were employes in the defendant bank, and the aggravating circumstances surrounding the transaction, whereby the defendant sought to establish its rights to these funds, and giving all of the evidence of both plaintiff and defendant due consideration, there can be but one conclusion reached, and that is the conclusion of the jury that the defendant bank's explanation of the division of these funds was wholly unsatisfactory and that the finding of the jury for the plaintiff was justified by the evidence, and should not be disturbed on appeal. To establish ratification it must be shown that Wilson was fully informed of all the material facts and circumstances of the transaction at the time of the ratification, and that he acted with full knowledge. Gaar. Scott & Co. v. Rogers, 46 Okla. 67, 148 Pac. 161; Cargile v. Union State Bank, 40 Okla. 506, 139 Pac. 701; Stock Exchange Bank v. Williamson, 6 Okla. 348, 50 Pac. 93. The liability of the bank for the funds deposited with it is undisputed, and unless the bank shows that it had returned these funds, or paid them out on the proper authority, it is liable therefor in this action.

At the time of the transfer by the officers of the bank of plaintiff's account to the account of the cashier, Gillock, the bookkeeper, Roe, and to the realty company, the bank parted with nothing. The funds were transferred for the purpose of covering the shortage of those parties. This shortage was caused by defalcation of its officers. The bank being compelled to account for these funds leaves it in the same position that it had been left in by the wrongful acts of its officers. The bank guarantees the trustworthiness of its officials, and a depositor is not under any obligation whatever to make up shortages of the officials of the bank in their accounts. They have no right to transfer funds of one depositor to make up shortages in another depositor's account, or to make up shortages in the accounts of the bank's officials.

The doctrine of notice or knowledge has no application. The bank parted with nothing at the time of the alleged transfer of the funds of Wilson to the account of some other individuals; neither did it extend credit to them, and if it had, and if it is true, as the plaintiff contends, that the transfer was wholly unauthorized, it would make no difference whether the bank parted with anything at the time of the transfer, or gave credit to any of the individuals to whose accounts the funds were transferred. The ignorance or lack of knowledge on the part

of the bank cannot strengthen the bank's title to these funds; and if the doctrine of knowledge did apply at the time of said transfer, whatever loss the bank has sustained it has sustained by reason of the wrongful act of its officials in misappropriating the funds of the bank, and has not sustained any loss whatever by reason of the transaction in regard to the funds of the plaintiff. If the bank had received knowledge through its board of directors or otherwise, it would have been its duty to have repudiated the whole transaction. whereby Wilson's funds were transferred to the accounts of some other individuals to make up their shortages. Emerado Farmers' Elevator Co. v. Farmers' Banks of Emerado, 20 N. D. 270, 127 N. W. 522, 29 L. R. A. (N. S.) 567; First National Bank v. Blake (C. C.) 60 Fed. 78; Fidelity & Deposit Co. v. Rankin, 33 Okla. 7, 124 Pac. 71; Central National Bank v. Insurance Co., 104 U. S. 54, 26, L. Ed. 693.

The defendant contends that the trial court erred in refusing to give certain instructions requested by defendant. An examination of these requested instructions clearly discloses that they are in effect peremptory instructions, which would not be justified under the pleadings and the evidence. The defendant also contends that the court erred in the instructions given to the jury. The instructions as a whole, under the pleading and evidence. fairly and impartially state the law of the case, and there was no prejudicial and reversible error committed by the trial court in its statement of the law in its instructions to the jury.

The judgment of the trial court should be affirmed.

By the Court: It is so ordered.