## MESSMAN v. LOWER et al.

No. 10400—Opinion Filed December 20, 1921.

(Syllabus.)

1. **Frauds, Statute Of—Agreement for Sale of Realty—Authority of Agent.**

Any agreement for the sale of real property, or of an interest therein, if made by an agent, is invalid, unless the authority of the agent be in writing and subscribed by the principal.

2. **Principal and Agent—Authority of Subagent.**

The general rule is that an agent has no implied authority to delegate his powers to a subagent, and anyone employed by him as a subagent does not become the agent of the principal, without the principal's consent.

3. **Same—Ratification of Contract by One Assuming to Act as Agent.**

Ratification of an unauthorized contract by one assuming to act as agent must be with full knowledge of all the facts, and it is essential that the principal shall have full knowledge at the time of the claimed ratification of all the material facts relative to the unauthorized transaction.

Error from District Court, Garfield County; J. C. Robberts, Judge.

Action by L. E. Messman against Wood Lower and others to recover certain items of expense incurred by plaintiff incident to the purchase of land from certain of defendants. Judgment for defendants, and plaintiff brings error. Affirmed.

H. Z. Wedgwood, for plaintiff in error.

Hills, Manatt & Bowen, for defendants in error.

PITCHFORD, V. C. J. This action was commenced in the court below by plaintiff in error against defendants in error to recover judgment for $163.97. The evidence discloses substantially the following facts:

One H. H. Lower died, seized and possessed of a certain 160-acre farm in Garfield county, Oklahoma. The heirs of the deceased, who were nonresidents of Oklahoma,

placed the farm in hands of one Walter Jeffries for the purpose of procuring a purchaser therefor. The terms upon which the property was to be sold were to be $7,000 cash, and in the event a purchaser was procured upon these terms, Jeffries was to receive $200 as his commission.

Thereafter, Jeffries interested one John F. Miller in trying to secure a purchaser, agreeing to pay Miller, in the event the latter secured a purchaser and the sale was effected, one-half of the commission to be received by Jeffries from the owners. There is no conflict in the evidence as to the terms of the sale between the owners and Jeffries. Jeffries informed Miller of the exact terms upon which the property was to be sold.

Thereafter, on the 15th day of September, 1917, Miller entered into a written contract with plaintiff for the sale of the land for $7,000. This contract provided that the owners were to pay all the taxes for the year 1917, and to furnish the purchaser with an abstract. At the time the contract was signed, the plaintiff paid to Miller $100; the $6,900 balance due was to be paid upon approval of title. After securing the contract and the $100, Miller reported to Jeffries his agreement with plaintiff. The testimony on the part of Jeffries is that he informed Miller at the time that he refused to recognize his right to enter into any written contract; that he refused to accept the contract and the $100, and that the offer made by plaintiff did not meet with the terms stipulated by the owners. After this conversation with Jeffries, Miller deposited the $100, together with the contract, in the Douglas Bank. Messman then prepared a deed expressing the consideration at $7,000. The deed was sent to the owners, and appears to have been signed by them on the 22nd day of September, 1917. After acknowledgment by the several owners, the deed was deposited in the bank wherein the contract and the $100 had been theretofore deposited. The following instructions accompanied the deed:

"The undersigned, Jessie Fugar and Fred Lower, heirs at law of Henry Lower, deceased, have signed the attached deed to their undivided interest in the southwest quarter of section 31, township 21, range 4, Garfield county, Oklahoma, conveying their said interests to L. F. Messman. You are instructed to deliver this deed to the purchaser upon the payment to you to the credit of the undersigned of their one-sixth each interest in the purchase price of $7,000, less their proportion of the commission of $200, which they are informed is due the agent and one Jeffries for negotiating said sale.

Upon receiving the amount of $133.33 for the credit of Jessie Fugar, and the same amount for the credit of Fred Lower, then so far as these parties are concerned the deed may be delivered to the purchaser.

"Upon receipt of these amounts, please forward these amounts to the undersigned at their address below.

"Jessie Fugar, 509 East Prairie St.,

"Centerville, Iowa.

"Fred Lower, South Main Street,

"Centerville, Iowa."

The question decisive of this case is as to the agency of Miller, and whether or not the defendant owners would be bound by any action of Miller's in the premises. The proof is clear that Miller was not at any time employed by any of the owners to find a purchaser; no connection even remotely between Miller and the owners of the land is shown except the agreement wherein Jeffries agreed to divide the commission with Miller if Miller found a purchaser for the land. All that Jeffries was ever employed to do was to find a purchaser at a net price to the owners of $6,800. Jeffries' authority was not in writing, and, under the facts as disclosed by the evidence, he was without authority to bind the owners by any written contract with plaintiff which would vary the terms of sale, and it follows that Miller would not be clothed with any greater authority in the premises than was possessed by Jeffries. Plaintiff knew or should have known that Miller, pretending to act as the agent of the owners, could not bind them by this contract unless his authority to do so had been in writing.

It is a well-settled principle that any agreement for the sale of real property, or of an interest therein, if made by an agent, is invalid, unless the authority of the agent be in writing and subscribed by the principal. Schechinger v. Gault et al., 35 Okla. 416, 130 Pac. 305.

Nowhere is it shown that the owners had any written contract with the plaintiff, or that Miller was authorized to act for them, except the statement of Miller himself regarding his agreement with Jeffries. This authority could not be given by Jeffries without the consent of the owners. An agent has no authority to delegate his power to a sub-agent; and one employed by him as a sub-agent does not become the agent of the principal, without the principal's consent. Gaar, Scott & Co. v. Rogers, 46 Okla. 67, 148 Pac. 161.

The plaintiff complains of error in not giving Instruction No. 3 requested by the plaintiff, which is as follows:

"You are further instructed that in employing John L. Miller to get a purchaser for the land in question, the defendant, Walter Jeffries, thereby authorized him to get a written offer of purchase and sale therefor, subject to his ratification or approval; and if after said Miller procured the written contract in evidence herein, he exhibited the same to said defendant, and he thereupon sent the deed to the grantors for their execution, without any other contract being made, he thereby accepted and ratified said written contract, and became bound by the terms thereof."

This instruction was properly refused. Even if Jeffries had ratified it, the owners would not be bound by his ratification, as there is no effort made to show that they had any knowledge of the terms of the contract. Ratification of an unauthorized contract must be with a full knowledge of all the facts, and it is essential that the principal shall have full knowledge at the time of the claimed ratification of all the material facts relative to the unauthorized transaction. Cargile v. Union State Bank, 40 Okla. 506, 139 Pac. 701.

The plaintiff received from the owners a deed warranting the title to the land to be free from all encumbrances, and if plaintiff had bought the property and received the deed therefor, which he did receive, and at that time there were liens or encumbrances of any nature against the land, he would have been protected by the warranty. But we find, after the deed had been deposited in the bank, plaintiff claimed that certain items should be deducted from the consideration. These items consisted of the taxes for 1917, certain amounts paid by the plaintiff in completing the abstract, also certain improvements placed on the premises subsequent to the contract between Miller and plaintiff, and certain other items, all of which were discussed and agreed upon. Jeffries absolutely refused to deliver the deed unless there was deposited in the Douglas Bank, to the credit of the owners, $6,800, and a deposit to his credit of $200, and the bank should issue deposit certificates for these amounts. The plaintiff was not forced to take the deed upon these or any other terms, and when these amounts were deposited in the bank, as required by Jeffries, the act of the plaintiff in making the deposit was purely voluntary, and the law would not permit him to receive the deed by paying the amount demanded with the mental reservation that, after securing the deed, he would

then bring an action against the owners for the several amounts in dispute and garnish the sums so deposited.

After the close of the evidence, the trial court properly sustained a demurrer to the evidence as to the liability of the defendant Jeffries. The issues involved in the trial in the lower court were submitted to the jury under proper instructions. There was sufficient competent evidence reasonably tending to support the verdict returned by the jury.

We are therefore of the opinion that the judgment of the trial court should be affirmed and it is so ordered.

HARRISON, C. J., and McNEILL, ELTING, and NICHOLSON, JJ., concur.